NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0300n.06

No. 15-5775

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 07, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| In re: EARL BENARD BLASINGAME; MARGARET GOOCH BLASINGAME, | ) ) ) | |
| Debtors. | ) ) | |
| CHURCH JOINT VENTURE, L.P.; FARMERS & MERCHANTS BANK, | ) ) ) | ON APPEAL FROM THE BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | |
| EARL BENARD BLASINGAME; MARGARET GOOCH BLASINGAME, | ) ) ) | |
| Defendants-Appellants. | ) ) | |

Before: KETHLEDGE, WHITE, and DAVIS,[*] Circuit Judges.

KETHLEDGE, Circuit Judge. Debtors Benard and Margaret Blasingame sought to settle a pending malpractice claim against their former bankruptcy lawyers over the objection of their creditors. The bankruptcy court rejected the proposed settlement. The Blasingames appealed. The Bankruptcy Appellate Panel of the Sixth Circuit dismissed their appeal for want of jurisdiction. We dismiss the Blasingames' appeal for the same reason.

I.

In 1983, Benard and Margaret Blasingame hired tax lawyer Martin Grusin to set up the Blasingame Trust. Over the following decades, the Blasingames, together with Benard

---

[*] The Honorable Andre M. Davis, Senior Circuit Judge for the United States Court of Appeals for the Fourth Circuit, sitting by designation.

Blasingame's mother, established numerous other trusts. They also accumulated millions of dollars in debt, owed mostly to Church Joint Venture and Farmers & Merchants Bank, along with $300,000 in unpaid federal taxes. In June 2008, their creditors began garnishing Margaret Blasingame's account at a local bank. Grusin advised the Blasingames to declare bankruptcy and recommended that they hire an experienced bankruptcy lawyer, Tommy Fullen, to prepare their bankruptcy petition.

In August 2008, the Blasingames—with Fullen's help—filed for bankruptcy in the Western District of Tennessee. In their bankruptcy petition, they claimed less than $6,000 in assets. In fact, as the bankruptcy court later found, the Blasingames failed to disclose millions of dollars in assets that they controlled through a complex web of family trusts, shell companies, and shifting "clearing accounts." They failed to disclose the life estate they held in their $1.7 million homestead, title to which was held by the Blasingame Family Residence Generation Skipping Trust. They failed to disclose approximately $1.2 million in household goods. They claimed two 1985 Mercedes-Benz vehicles worth $1,100, but failed to disclose their control of a 2008 Mercedes-Benz vehicle belonging to the G.F. Corporation, of which Margaret Blasingame is the president, and for which the sole shareholder is the Blasingame Family Business Investment Trust. They likewise failed to disclose their use of a vehicle belonging to Flozone Services, Inc., a company wholly owned by the Blasingames' daughter, and of which Benard Blasingame is the CEO. And they managed their liquid assets in unusual ways: Margaret Blasingame, a schoolteacher, routinely deposited her paycheck into a bank account belonging to her son; the Blasingames' bookkeeper shifted money between this and other "clearing accounts," each of which went undisclosed.

The bankruptcy court eventually concluded that the Blasingames' conduct was designed to "conceal[] assets from their creditors both before and after the filing of their bankruptcy petition" and tended to "exhibit common badges of fraud." As for the Blasingames' lawyers, Grusin later "admitted under oath that he gave pre-petition advice to [the Blasingames] about the preparation of their schedules and statements that was not legally supported." And Fullen testified that, in the Blasingames' bankruptcy petition, he had "selected $4,000 as the value for the [Blasingames'] household goods because that was the maximum exemption for personal property available at that time."

In November 2011, the trustee for the bankruptcy estate, Edward Montedonico, testified that he believed that the estate had a colorable claim against Grusin and Fullen for legal malpractice but that the estate lacked the resources to pursue the claim. He moved the bankruptcy court to permit Church Joint Venture, the Blasingames' largest creditor, to litigate the claim on the estate's behalf. The court granted the trustee's motion, and Church—acting on the estate's behalf—sued Grusin and Fullen for malpractice in federal district court. The district court referred the claim to the bankruptcy court, where it remains pending as an adversary proceeding. In April 2014, the trustee and the Blasingames moved jointly, over Church's objection, to settle the estate's malpractice claim against Grusin and Fullen for $ 1 million. *See* Fed. R. Bankr. P. 9019. The bankruptcy court denied the motion.

In December 2014, the Blasingames moved to settle the claim for $1.25 million. The trustee filed a response urging the bankruptcy court to approve the settlement. Church objected, arguing that the proposed settlement did not reflect "the value of the lawsuit." The court denied the motion, noting that Church, which holds 95% of the estate's unsecured claims, is "in the best position to evaluate the potential recovery to the estate from the litigation." The court also

concluded that the "evidence of legal malpractice is overwhelming" and that "there is a high probability that the legal malpractice claim will be successful on the merits."

The Blasingames appealed. The Bankruptcy Appellate Panel of the Sixth Circuit dismissed their appeal for lack of jurisdiction because, the panel concluded, the bankruptcy court's order was not a "final" order susceptible to appeal as of right. *See* 28 U.S.C. § 158(a)(1). The Blasingames now appeal the panel's order of dismissal.

II.

The Blasingames argue that we have jurisdiction to consider their appeal under 28 U.S.C. § 158(d)(1), which permits consideration of "appeals from all final decisions, judgments, orders, and decrees" issued by a district court or bankruptcy appellate panel sitting in review of a bankruptcy court decision. Jurisdiction under 28 U.S.C. § 158(d)(1) is limited to appeals arising from "final bankruptcy court decisions." *In re Julien Co.*, 146 F.3d 420, 422 (6th Cir. 1998). Our jurisdiction here thus turns on the finality of the bankruptcy court's order denying the Blasingames' motion to approve the proposed settlement.

Section 158 permits bankruptcy litigants to appeal bankruptcy-court orders as of right only where the orders "finally dispose of discrete disputes within the larger case[.]" *Howard Delivery Serv. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 657 n.3 (2006) (emphasis omitted). Where a bankruptcy court's order does not "alter[] the status quo" or "fix[] the rights and obligations of the parties[,]" it does not finally dispose of a discrete dispute. *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1692 (2015). Thus, for example, where a bankruptcy court denies a debtor's proposed confirmation plan and gives the debtor leave to amend the proposed plan, the denial is not final because the "parties' rights and obligations remain unsettled." *Id.* at 1693.

Here, the bankruptcy court's decision to deny the Blasingames' proposed settlement agreement did not resolve any of the parties' rights or obligations as to the estate's claims against Grusin and Fullen. The trustee remains free to propose another settlement agreement or to continue pursuing the estate's malpractice claims against Grusin and Fullen. The trustee might yet even obtain the bankruptcy court's approval of the same settlement agreement, if Church were to indicate that the settlement is a fair one. In short, the order changed nothing. The order therefore lacked finality, and so we lack jurisdiction to consider the Blasingames' appeal under 28 U.S.C. § 158(d)(1).

The Blasingames argue that the order was final because "*approval* of the settlement would effectively conclude the legal malpractice action[.]" Blasingame Br. at 13 (emphasis added). But "it is of course quite common for the finality of a decision to depend on which way the decision goes. An order granting a motion for summary judgment is final; an order denying such a motion is not." *Bullard*, 135 S. Ct. at 1694.

The Blasingames also argue that the order is appealable under the "collateral order doctrine." *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). But that doctrine applies only where an order "finally determines claims of right[.]" *In re Dow Corning Corp.*, 86 F.3d 482, 488 (6th Cir. 1996). As explained above, the bankruptcy court's order did not finally determine any claim.

The appeal is dismissed for want of jurisdiction.