RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0018p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────────

IN RE:  EARL BENARD BLASINGAME; MARGARET
GOOCH BLASINGAME,

                                    *Debtors*.

─────────────────────────────────────────

CHURCH JOINT VENTURE, L.P., on Behalf of Chapter 7
Trustee,

                                    *Plaintiff-Appellant*,

        *v*.

EARL BENARD BLASINGAME; MARGARET GOOCH
BLASINGAME;  MARTIN  A.  GRUSIN;  MAG
MANAGEMENT CORPORATION, dba JG Law Firm;
TOMMY L. FULLEN; LAW OFFICE OF TOMMY L.
FULLEN,

                                    *Defendants-Appellees*.

> No. 19-5505

─────────────────────

Appeal from the Bankruptcy Appellate Panel of the Sixth Circuit;
No. 18-8017—Daniel S. Opperman, Jessica E. Price Smith, and Tracey N. Wise,
Bankruptcy Appellate Panel Judges.

United States Bankruptcy Court for the Western District of Tennessee at Memphis;
Nos. 2:08-bk-28289; 2:14-ap-00429—Jennie D. Latta, Judge.

Argued:  October 8, 2020

Decided and Filed:  January 26, 2021

Before:  SUHRHEINRICH, DONALD, and MURPHY, Circuit Judges

─────────────────────

## COUNSEL

**ARGUED:**  Carrie R. McNair, AKERLY LAW PLLC, Coppell, Texas, for Appellant.  Michael
P. Coury, GLANKLER BROWN, PLLC, Memphis, Tennessee, for Appellees Earl and Margaret

Blasingame.  **ON BRIEF:**  Carrie R. McNair, Bruce W. Akerly, AKERLY LAW PLLC, Coppell, Texas, for Appellant.  Michael P. Coury, GLANKLER BROWN, PLLC, Memphis, Tennessee, for Appellees Earl and Margaret Blasingame.

---

**OPINION**

---

BERNICE BOUIE DONALD, Circuit Judge.  Church Joint Venture, L.P. ("CJV") appeals the Bankruptcy Appellate Panel's ("BAP") order affirming the bankruptcy court's grant of summary judgment to Earl Bernard Blasingame and Margaret Gooch Blasingame (collectively "the Blasingames").  The bankruptcy court determined that a malpractice claim against the attorneys assisting the Blasingames in their bankruptcy filing is property of the Blasingames, and not the bankruptcy estate.  We AFFIRM.

## I.  BACKGROUND

In July 2008, the Blasingames met with Martin A. Grusin and Tommy L. Fullen (collectively the "filing attorneys") to discuss the mounting pressure of their financial situation. Grusin was familiar with the Blasingames' finances prior to their bankruptcy conversations and suggested Fullen, a bankruptcy attorney, to assist in their bankruptcy filing.  The Blasingames signed engagement agreements with both Grusin and Fullen.  *Church Joint Ventures, L.P. v. Blasingame (In re Blasingame)*, 597 B.R. 614, 616-17 (B.A.P. 6th Cir. 2019).

The Blasingames filed their Chapter 7 bankruptcy petition on August 15, 2008, in the United States Bankruptcy Court for the Western District of Tennessee.  Fullen signed the petition as the attorney of record.  *In re Blasingame*, 559 B.R. 692, 695 (B.A.P. 6th Cir. 2016).  Edward L. Montedonico ("the Trustee") was appointed as Trustee in the case.  *Id.* at 696.  Fullen constructed the bankruptcy schedules, pulling most of the Blasingames' financial information from Grusin.

> In their bankruptcy petition, [the Blasingames] claimed less than $6,000 in assets.  In fact, as the bankruptcy court later found, the Blasingames failed to disclose millions of dollars in assets that they controlled through a complex web of family trusts, shell companies, and shifting "clearing accounts."  They failed to disclose the life estate they held in their $1.7 million homestead, title to which was held by

the Blasingame Family Residence Generation Skipping Trust. They failed to disclose approximately $1.2 million in household goods. They claimed two 1985 Mercedes-Benz vehicles worth $1,100, but failed to disclose their control of a 2008 Mercedes-Benz vehicle belonging to the G.F. Corporation, of which Margaret Blasingame is the president, and for which the sole shareholder is the Blasingame Family Business Investment Trust. They likewise failed to disclose their use of a vehicle belonging to Flozone Services, Inc., a company wholly owned by the Blasingames' daughter, and of which Benard Blasingame is the CEO. And they managed their liquid assets in unusual ways: Margaret Blasingame, a schoolteacher, routinely deposited her paycheck into a bank account belonging to her son; the Blasingames' bookkeeper shifted money between this and other "clearing accounts," each of which went undisclosed.

*Church Joint Venture, L.P. v. Blasingame (In re Blasingame)*, 651 F. App'x 386, 387 (6th Cir. 2016).

On February 22, 2011, the bankruptcy court granted the Trustee's motion for summary judgment, denying the Blasingames' discharge. The bankruptcy court denied the Blasingames' discharge on the basis that "[t]he petition, schedules, and statement of financial affairs, as initially filed, did not disclose Debtors' interests in several trusts and corporations, certain household goods, multiple annuities, property held for others, several bank accounts and several liabilities, and an assignment to [] Grusin." *In re Blasingame*, 559 B.R. at 695 (abbreviations removed). On July 19, 2011, the bankruptcy court disqualified the filing attorneys from further representation of the Blasingames. Although the Blasingames' new counsel was able to obtain relief from the summary judgment order, their discharge was once again denied on January 15, 2015, following a trial. On appeal, the BAP affirmed the denial. *In re Blasingame*, 559 B.R. at 701.

As a result of the filing attorneys' mishandling of the Blasingames' bankruptcy filing and the Trustee's belief that the estate lacked the resources to pursue a malpractice claim against them itself, creditor CJV[1] obtained derivative standing from the bankruptcy court to file a malpractice claim against the filing attorneys on behalf of the estate. *In re Blasingame*, 651 F. App'x at 387-88. CJV, in the bankruptcy court, and the Blasingames, in Tennessee state court, filed malpractice complaints against the filing attorneys, both alleging that the filing attorneys'

---

[1]CJV holds 95% of the bankruptcy estate's unsecured claims. *In re Blasingame*, 651 F. App'x at 388.

negligence resulted in the denial of the Blasingames' discharge. During this time, the Blasingames also attempted to settle the malpractice claim with the filing attorneys for $1 million and later $1.25 million. *Id.* The bankruptcy court denied the Blasingames' motion to approve the settlement because of the overwhelming likelihood that the claim would be successful on the merits. *Id.* at 388. The Blasingames appealed the denial, but the BAP dismissed their appeal for lack of jurisdiction, holding that the bankruptcy court's order was not a final, appealable order. *Id.* The Blasingames further appealed the dismissal, and a panel of this Court similarly dismissed the appeal for lack of jurisdiction. *Id.* at 389.

On January 2, 2018, CJV filed a motion for summary judgment, asserting that the malpractice claims against the filing attorneys are property of the bankruptcy estate, not the Blasingames. The Blasingames responded to the motion, and the bankruptcy court treated the response as a cross-motion for summary judgment, seeking a declaration that the malpractice claims were property of the Blasingames. Applying Tennessee law to determine when the legal malpractice claims accrued, the bankruptcy court denied CJV's motion for summary judgment and granted the Blasingames' cross-motion for summary judgment. The bankruptcy court determined that the claims arose post-petition and were therefore the property of the Blasingames.

CJV appealed to the BAP. A panel of the BAP unanimously affirmed the bankruptcy court's order. *CJV*, 597 B.R. at 616. The panel, relying on this Court's unpublished decision in *Underhill v. Huntington National Bank (In re Underhill)*, 579 F. App'x 480 (6th Cir. 2014),[2] held that the malpractice claims arose post-petition and were thus property of the Blasingames because the only injury—denial of the Blasingames' discharges—occurred post-petition. *CJV*, 597 B.R. at 619. CJV now appeals the BAP's decision affirming the bankruptcy court's order.

## II. ANALYSIS

Although this Court has frequently encountered the general question posed here— whether contested claims are property of the debtor or the bankruptcy estate—the context of a

---

[2]The BAP improperly found that "*Underhill* controls and binds the bankruptcy court and [the BAP]." *CJV*, 597 B.R. at 619. Because *Underhill* is an unpublished decision of this Court, it is not binding authority.

legal malpractice claim against the debtors' filing attorneys seems to be an issue of first impression for this Court. The bankruptcy court applied the "accrual theory," determining that, because the malpractice claims did not accrue until the Blasingames suffered an injury, they arose post-petition, and are therefore property of the Blasingames. As explained by the bankruptcy court:

> The [Blasingames] are correct. There can be no more personal damage in connection with a bankruptcy case than the loss of a debtor's discharge. [CJV] has alleged no other damage that accrued to the bankruptcy estate, and has alleged no damage that accrued to the [Blasingames] prior to the filing of their bankruptcy petition. Neither of the complaints describes a cause of action that could have been pursued by the [Blasingames] prior to the filing of their bankruptcy petition.

*Church Joint Venture v. Blasingame (In re Blasingame)*, No. 08-28289-L, 2018 Bankr. LEXIS 1781, at *17 (W.D. Tenn. May 9, 2018).

We review a bankruptcy court's grant of summary judgment *de novo*. *Trost v. Trost*, 735 F. App'x 875, 877 (6th Cir. 2018). "Granting summary judgment is appropriate '[w]here the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.'" *Meade v. Pension Appeals & Review Comm.*, 966 F.2d 190, 192-93 (6th Cir. 1992) (alteration in original) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987)); Fed. R. Civ. P. 56(a).

All parties agree that summary judgment was proper to determine this issue because there are no genuine issues of material fact. *CJV*, 597 B.R. at 617. Their disagreement lies exclusively in the legal determination of the ownership of the malpractice claims. We review the bankruptcy court's conclusions of law *de novo*. *Zingale v. Rabin (In re Zingale)*, 693 F.3d 704, 707 (6th Cir. 2012). "The BAP's decision is not binding on this [C]ourt." *Id.*

Section 541(a) of the Bankruptcy Code provides that, barring a few exceptions not relevant here, "all legal or equitable interests of the debtor in property as of the commencement of the case" are property of the bankruptcy estate. 11 U.S.C. § 541 (a)(1). "[E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the

reach of § 541." *Tyler v. DH Capital Mgmt., Inc.*, 736 F.3d 455, 461 (6th Cir. 2013) (alteration in original) (quoting *Azbill v. Kendrick (In re Azbill)*, No. 06-8074, 2008 Bankr. LEXIS 527, at *19-20 (B.A.P. 6th Cir. Mar. 11, 2008)). While § 541 dictates what interests are property of the estate pursuant to federal bankruptcy law, the "nature and extent of [the] property rights . . . are determined by the 'underlying [state] substantive law.'" *Id.* (quoting *Raleigh v. Ill. Dep't of Rev.*, 530 U.S. 15, 20 (2000)). "Unless some federal interest requires a different result, there is no reason why such interest should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440 U.S. 48, 55 (1979).

To make out a prima facie claim of legal malpractice under Tennessee law, a plaintiff must show the existence of five elements: (1) the attorney owed a duty to the plaintiff; (2) the attorney breached that duty; (3) the plaintiff suffered damages; (4) the breach was the but for cause of the plaintiff's damages; and (5) the breach was the proximate cause of the plaintiff's damages. *Gibson v. Trant*, 58 S.W.3d 103, 108 (Tenn. 2001).

To analyze the nature and extent of the rights in the legal malpractice claims, we must determine which elements of the claims were satisfied as of the commencement of the bankruptcy filing. CJV contends, and the Blasingames do not dispute, that the filing attorneys owed the Blasingames duties with respect to the process of filing for bankruptcy and that the filing attorneys breached those duties when they failed to properly investigate and draft the Blasingames' schedules and statement of financial affairs prior to filing the Blasingames' bankruptcy petition.

The parties do, of course, dispute whether the damages element was met pre-petition,[3] or, alternatively, whether that is a requirement at all. The Blasingames assert that both the Trustee's malpractice complaint and their own malpractice complaint filed against the filing attorneys allege that the sole damages caused by the filing attorneys' breach was the denial of the Blasingames' discharge, which is undisputedly a post-petition event. Appellee's Br. at 8-9. CJV, on the other hand, points to two possible events which damaged the Blasingames pre-petition: first, the advice to file for bankruptcy in the first place because bankruptcy may not

---

[3]Only the damages element remains because the causation elements are contingent on, and can be satisfied simultaneously with, the existence of damages.

have been the Blasingames' best option; and second, the negligent construction of their bankruptcy petition.  Appellant's Br. at 25.

A legal malpractice claim accrues as of the date on which the negligence became irremediable.  *Ameraccount Club, Inc. v. Hill*, 617 S.W.2d 876, 879 (Tenn. 1981) (citing *Biberstine v. Woodworth*, 278 N.W.2d 41, 42 (Mich. 1979) (holding that an attorney's negligent failure to properly schedule a client's debt in a petition for bankruptcy became a viable malpractice claim at the time of discharge because the petition was amendable up until that point)).  With respect to each asserted breach, the ultimate damage came once the filing attorneys filed the bankruptcy petition, and not prior to the commencement of the bankruptcy case because, until that time, the Blasingames need not have continued on the path towards filing for bankruptcy at all.

In the alternative, however, CJV points to the real crux of the issue: whether, even assuming that all damages occurred post-petition, the filing attorneys' underlying pre-petition conduct causes the claim to be "sufficiently rooted in the [debtor's] pre-bankruptcy past" as to make it property of the estate.  Appellant's Br. at 26-31 (quoting *Segal v. Rochelle*, 382 U.S. 375, 380 (1966)).  This language has a long and disputed history.

In *Segal*, the debtors and their business partnership filed their bankruptcy petitions in 1961.  382 U.S. at 376.  The following year, the trustee of the bankruptcy estate obtained loss-carryback tax refunds for losses the partnership suffered during 1961 (prior to filing their petitions).  *Id.*  These losses were carried back to 1959 and 1960 to offset net income on which the debtors had already paid taxes.  *Id.*  The Supreme Court held that the "loss-carryback refund claim . . . [was] sufficiently rooted in the prebankruptcy past and so little entangled with the [debtors'] ability to make an unencumbered fresh start that it should be regarded as 'property' under § 70a(5) [of the Bankruptcy Act]."  *Id.* at 380.

*Segal* was based on § 70a(5) of the 1898 Bankruptcy Act, which vested to the trustee of the bankruptcy estate "property which prior to the filing of the petition [the debtor] could by any means have transferred or which might have been levied upon and sold under judicial process against [the debtor]."  As noted above, the current Bankruptcy Code, enacted in 1978 by § 101 of

the Bankruptcy Reform Act, includes a different provision regarding the property of the estate—"all legal or equitable interests of the debtor in property as of the commencement of the case" regardless of "wherever located and by whomever held."  11 U.S.C. § 541(a).  Although some circuits have held that the language in § 541 codified *Segal*'s specific holding by making the location of the claim at issue irrelevant,[4] other circuits have questioned whether the "rooted in the past" concept survived the Bankruptcy Code's enactment.[5]  This Court has favorably recited *Segal*, albeit sparingly.  *See e.g.*, *Lawrence v. Commonwealth of Ky. Transp. Cabinet (In re Shelbyville Rd. Shoppes, LLC)*, 775 F.3d 789, 796 (6th Cir. 2015) (applying *Segal*'s "sufficiently rooted" test to determine whether a deposit was property of the bankruptcy estate).

There is little agreement, both inter- and intra-circuit, on how courts should apply the *Segal* test when dealing with a claim for legal malpractice against the filing attorneys:

> Some courts have applied the test expansively, including contingent and unripe claims as property of the estate.  *See, e.g.*, *Mueller*, No. 06-8053, 2007 Bankr. Lexis 1523, at *8 (B.A.P. 6th Cir. May 10, 2007) (holding that a legal-malpractice claim became part of estate at the time of negligence, not when damages are incurred).  Others have treated the test as equivalent to the determination of when the cause of action accrues under the substantive law.  *See, e.g.*, *Witko v. Menotte (In re Witko)*, 374 F.3d 1040, 1044 (11th Cir. 2004) (holding that a legal-malpractice claim was not part of the estate since harm from the attorney's pre-petition failures did not occur until after filing the petition).

---

[4] *See Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) (applying *Segal*'s "sufficiently rooted" test); *Beaman v. Shearin (In re Shearin)*, 224 F.3d 346, 351 (4th Cir. 2000) (affirming the bankruptcy court's use of *Segal*'s "sufficiently rooted" test); *In re Barowsky*, 946 F.2d 1516, 1518-19 (10th Cir. 1991) (finding that Congress affirmatively adopted *Segal*'s analysis of property); *In re Ryerson*, 739 F.2d 1423, 1426 (9th Cir. 1984) ("The Code follows *Segal* insofar as it includes after-acquired property 'sufficiently rooted in the prebankruptcy past' but eliminates the requirement that it not be entangled with the debtor's ability to make a fresh start.").

[5] *See Bracewell v. Kelley (In re Bracewell)*, 454 F.3d 1234, 1242 (11th Cir. 2006) ("The *Segal* decision told us how to define property under the old bankruptcy code, before it was amended in 1978 to include an explicit definition of property.  We will not attribute to the Supreme Court an intent to construe legislative language that it had not seen and which would not even exist for another dozen years."); *Burgess v. Sikes (In re Burgess)*, 438 F.3d 493, 498 (5th Cir. 2006) ("*Segal*'s 'sufficiently rooted' test did not survive the enactment of the Bankruptcy Code."); *Drewes v. Vote (In re Vote)*, 276 F.3d 1024, 1026 (8th Cir. 2002) (finding that applying the "sufficiently rooted" test to the claim at hand would broaden the scope of § 541 beyond claims which exist at the commencement of the case).

*Tyler*, 736 F.3d at 462. In *Tyler*, we declined to answer the question before this Court now: "whether a cause of action, one or more of whose elements have not been satisfied at time of the petition, may become pre-petition property." *Id.* at 463.

Prior holdings have, however, provided some insights into the boundaries at play. *Id.* at 462. First, mere conduct is insufficient to root a claim in the past; a pre-petition violation is required. Second, all causes of action that could have been brought pre-petition are property of the estate, whether or not the debtors knew of the cause of action when they filed the petition. *Id.* Although the second instruction is not relevant here because a malpractice claim could not have been brought until the Blasingames suffered damages—the denial of their discharge—the first instruction guides our inquiry. Unfortunately, it does so only through another question: Does the "violation" occur when the duty is breached or when the damage is incurred? Unlike in *Tyler*, in which the property at issue was an action under the Fair Debt Collection Practices Act, it is not so clear here when the malpractice violation occurred. *Id.* at 463-64. We must look to Tennessee law to determine when acts constituting malpractice become a violation.

Tennessee used to follow the traditional common law rule that a claim accrues upon the wrongful act, not when damages are incurred. *Albert v. Sherman*, 67 S.W.2d 140, 141 (Tenn. 1934). But the Tennessee Supreme Court overruled the traditional common law rule, finding that a "cause of action accrues . . . when the patient discovers . . . or should have discovered the resulting injury." *Teeters v. Currey*, 518 S.W.2d 512, 517 (Tenn. 1974) (applying the rule in the context of a medical malpractice claim); *see Smith v. Tenn. Nat'l Guard*, 551 S.W.3d 702, 709-10 (Tenn. 2018) (reaffirming *Teeters* and explaining that its holding has since been applied to many other types of claims); *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 458 (Tenn. 2012). Although not in the bankruptcy context, we have applied *Teeters* to malpractice claims against attorneys as well. For example, in *Woodruff v. Tomlin*, this Court held that, with respect to plaintiffs' malpractice claims against attorneys hired to pursue their claims for damages resulting from personal injuries, "no cause of action accrued until after the plaintiffs discovered or could have reasonably discovered the malpractice and until after the judgment . . . had become final." 511 F.2d 1019, 1021 (6th Cir. 1975).

True enough, it is not of great consequence when, under Tennessee law, the malpractice claims became actionable because federal law determines when a property interest becomes part of the bankruptcy estate. *In re Underhill*, 579 F. App'x 480, 484 (6th Cir. 2014) (Donald, J., dissenting); *In re Terwilliger's Catering Plus, Inc.*, 911 F.2d 1168, 1172 (6th Cir. 1990). Thus, while it remains difficult to determine whether, if ever, an unaccrued claim can be "sufficiently rooted" in a debtor's past, it is clear that at the very least there must be some awareness of the claim in order for it to exist as a legal interest and be properly included in the debtor's bankruptcy petition. *See In re Underhill*, 579 F. App'x at 484 (Donald, J., dissenting) (contending that the debtors' tortious interference claim was part of the bankruptcy estate despite the fact that the claim had not accrued under state law because violative conduct occurred prior to the petition and the debtors *were aware of it* prior to the petition). Tennessee courts have likewise applied this same reasoning to their accrual rule, seeking to ameliorate the unjust results caused by treating a claim as accrued prior to a plaintiff's knowledge of the injury. *Smith*, 551 S.W.3d at 709-10.

Applying that test here, the malpractice cause of action could not have become a legal interest under Tennessee law until after the judgment denying the Blasingames' discharge was entered because the Blasingames were unaware of the filing attorneys' conduct, which allegedly constituted malpractice. This result is in accord with our Court's previous guidance. Here, the malpractice claims could not be more entangled with the Blasingames' ability to make a fresh start because they directly resulted in the denial of their discharge. Thus, at the time of the Blasingames' filing, the malpractice claims were not a legal interest under Tennessee law such that they could be considered as property of the bankruptcy estate under federal law.

In the alternative, CJV contends that, if this Court finds that even some of the malpractice claims arose pre-petition, "the Bankruptcy Court should have considered splitting the claims into two separate and distinct causes of action – one in the pre-petition period and one in the post-petition period." Appellant's Br. at 39. Because, as determined above, any legal interest in the malpractice claims arose post-petition, there is no need to divide them. Furthermore, CJV fails to offer any case law which endorses their proposal in the context of determining whether a property interest arose pre- or post-petition.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the BAP's holding.