*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BANKRUPTCY ESTATE OF PATRICIA ANN
THOMPSON, by STUART A. GOLD, Trustee, and
PATRICIA ANN THOMPSON,

UNPUBLISHED
June 22, 2023

Plaintiffs-Appellants,

v

No. 360999
Macomb Circuit Court
LC No. 2021-009641-NM

JAMES C. WARR, and JAMES C. WARR &
ASSOCIATES, PLC,

Defendants-Appellees.

Before: REDFORD, P.J., and O'BRIEN and FEENEY, JJ.

PER CURIAM.

In this legal-malpractice case, plaintiffs, Patricia Thompson, a bankruptcy debtor, and Stuart A. Gold, the trustee of Thompson's bankruptcy estate, appeal by right the trial court's order granting summary disposition in favor of Thompson's bankruptcy counsel, defendants James C. Warr and James C. Warr & Associates, PLC. We affirm.

## I. BACKGROUND

The complaint stated that plaintiff Patricia Thompson owned a day-care business, and had longstanding financial difficulties. Thompson reportedly had acquired a residence in 2013, identified as "Bringard," and one in 2014, identified as "Strathmoor," which she used as rentals, both of which she conveyed to her daughter, Yolanda Shelton, in 2018, for $500 and $100, respectively, when those properties had a market value of $40,000 and $30,000, respectively. Reportedly, Thompson also made 79 cash transfers totaling $48,094 to Shelton from 2018 through August 10, 2020. The complaint stated that Thompson continued to rent the Strathmoor property and receive the rent payments after she transferred it to Shelton.

On August 11, 2020, defendants filed Thompson's Chapter 7 bankruptcy petition, bankruptcy schedule, and statement of financial affairs. Defendants had reportedly also filed a bankruptcy petition for Shelton on April 13, 2020. Thompson's complaint alleges that defendants

were required to obtain her financial records including bank statements, check registers, copies of leases, property tax statements, asset appraisals, business financial statements and proof of income. According to the complaint, "[f]rom the records required to be obtained and reviewed, Defendants knew or should have known about the Cash Transfers and transfers of real property from Thompson to Shelton, as well as Thompson's interest in earned but unpaid receivables" and the rental income she received from the Strathmoor property. The complaint further alleged that during her bankruptcy proceedings, defendants were required to inform Thompson that she was legally obligated to completely and adequately disclose her assets and liabilities, to refrain from issuing misleading statements, and to comply with a local rule requiring the disclosure of various financial records. Defendants allegedly failed to disclose the cash and property transfers, or the continuing rent proceeds, on Thompson's behalf, and failed to advise Thompson regarding the consequences of nondisclosure. Thompson's single-count complaint asserted a claim for legal malpractice and damages as a direct and proximate result of the malpractice.

In the bankruptcy proceedings, on October 1, 2020, Gold filed an adversary proceeding against Shelton on behalf of the estate seeking to void the cash and property transfers, and defendants represented Shelton until Gold successfully moved to disqualify defendants from doing so. Gold filed an objection to discharging Thompson's debts, and he sought a money judgment in the amount of Thompson's undisclosed nonexempt receivables on the basis of Thompson's and defendants' failure to properly disclose assets and financial records. Gold's bankruptcy-court complaint against Thompson alleged that she withheld information, failed to keep or preserve financial records, made false oaths and accounts, intended to defraud or otherwise hinder creditors and the trustee, and made the following factual allegations:

> The defendant [Thompson] is in possession, custody and control of the requested records but has knowingly and fraudulently failed to produce the records referenced in paragraph 11 in violation of his duties under 11 U.S.C. §§ 521 and 542(e).
>
> Defendant knowingly and fraudulently failed to disclose, on her original and amended schedules A/B, her interest in account receivables and refunds due her on the petition date which she collected and deposited into her personal JPMorgan Chase account xxxx4493 during the period August 17 2020 through August 20, 2020 in the amount of $9,011.50. Defendant subsequently spent the funds without the knowledge or consent of the Trustee.
>
> Defendant knowingly and fraudulently failed to disclose her interest in various life insurance policies in response to question 31 on her original or amended schedules A/B.
>
> Defendant knowingly and fraudulently failed to disclose transfers to or for the benefit of insider Sheldon within one (1) year of the bankruptcy filing in response to question numbers 7, 8, 13 and or 18 on her Statement of Financial Affairs as follows:

* * *

-2-

Defendant knowingly and fraudulently failed to disclose her ownership or leasehold interest in the 3393 Chope Place, Clinton Township property on her schedules A/B or G.

Defendants failed to file a response to the objections and, on January 13, 2021, the bankruptcy court entered an order denying Thompson's discharge of debts and a judgment of $9,011 against her. Thompson was subsequently required to pay $16,000 to the estate after Gold discovered undisclosed life insurance policies along with the lease agreement for Strathmoor.

At the request of the bankruptcy court,[1] Gold and Thompson filed a complaint against defendants alleging legal malpractice and seeking damages, fees, and costs. Defendants moved for summary disposition under MCR 2.116(C)(8) (failure to state a claim), arguing that (1) Gold, as the bankruptcy trustee, did not have standing because a claim by the bankruptcy estate did not accrue until after the bankruptcy court denied the discharge of debts, and (2) Thompson's claim was barred by the wrongful-conduct rule which bars claims by those relying on their own illegal conduct for recovery. In its motion for summary disposition, defendants alleged that Thompson did not tell defendants about the transfers to her daughter or the business receivables or rental income. The trial court granted defendants' motion, and dismissed the complaint. This appeal followed.

## II. STANDARDS OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Kuznar v Raksha Co*, 481 Mich 169, 175; 750 NW2d 121 (2008). This Court also reviews de novo the question of law regarding whether a party has legal standing to assert a claim. *Mich Ed Ass'n v Superintendent of Pub Instruction*, 272 Mich App 1, 4; 724 NW2d 478 (2006).

A motion under MCR 2.116(C)(8) tests the *legal sufficiency* of a claim based on the factual allegations in the complaint. *Feyz v Mercy Mem Hosp*, 475 Mich 663, 672; 719 NW2d 1 (2006). When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone. *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013); MCR 2.116(G)(5). A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery. *Adair v Michigan*, 470 Mich 105, 119; 680 NW2d 386 (2004). [*El-Khalil v Oakwood Healthcare*, 504 Mich 152, 159-160; 934 NW2d 665 (2019) (emphasis in original).]

## III. GOLD'S STANDING

---

[1] The Order Authorizing Compromise of Claims Against Debtor was entered on May 4, 2021 in United States Bankruptcy Court, Eastern District of Michigan, Southern Division, Chapter 7 Case No. 20-48647-MAR, In the Matter of Patricia Ann Thompson.

.

Under MCR 2.201(B), "[A]n action must be prosecuted in the name of the real party in interest." The purpose of requiring standing "is to assess whether a litigant's interest in the issue is sufficient to ensure sincere and vigorous advocacy." *Trademark Props of Mich, LLC v Fed Nat'l Mtg Ass'n*, 308 Mich App 132, 136; 863 NW2d 344 (2014) (quotation marks and citations omitted). Standing concerns whether a party is properly before the court, not whether the issue is justiciable or whether the claim has merit. *Id.*

"A real party in interest is one who is vested with a right of action in a given claim although the beneficial interest may be with another." *Moses, Inc v Southeastern Mich Council of Gov'ts*, 270 Mich App 401, 416; 716 NW2d 278 (2006). In *Lansing Schs Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010), our Supreme Court stated that "a litigant has standing whenever there is a legal cause of action." The Court provided further guidance as follows:

> Where a cause of action is not provided at law, then a court should, in its discretion, determine whether a litigant has standing. A litigant may have standing in this context if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant. [*Id.*]

In this case, the complaint alleged legal malpractice before and after the bankruptcy filing by defendants' failing to obtain, review, and advise Thompson regarding her various financial records, failing to inform her about what to disclose in the filing, improperly filing Thompson's bankruptcy, and inadequately working with Gold to have her debts discharged.

A bankruptcy filing creates a separate estate. *Schwab v Reilly*, 560 US 770, 774; 130 S Ct 2652; 177 L Ed 2d 234 (2010). The debtor thus surrenders all rights to their property upon filing. *Young*, 294 Mich App at 143, citing 11 USC 541. In a Chapter 7 bankruptcy, the trustee marshals the assets of the debtor, liquidates the estate, and distributes the proceeds, if any, to the creditors. *RDM Holdings, LTD v Continental Plastics Co*, 281 Mich App 678, 693; 762 NW2d 529 (2008) (citations omitted). The bankruptcy debtor lists all assets on a bankruptcy schedule, including all of the debtor's legal or equitable interests in property, at the commencement of the case. 11 USC 541(a)(1); *Young v Indep Bank*, 294 Mich App 141, 143; 818 NW2d 406 (2011). An existing or potential cause of action constitutes an asset that must be included in the schedule of assets and liabilities. *Spohn v Van Dyke Pub Sch*, 296 Mich App 470, 481-482; 822 NW2d 239 (2012). The debtor loses standing personally to litigate claims that had belonged to him or her that have become vested in the bankruptcy estate trustee for the benefit of the estate. *Young*, 294 Mich App at 144.

Whether Gold has standing depends on whether the instant lawsuit is a property interest vested in the bankruptcy estate. Plaintiffs acknowledge that pre-bankruptcy claims are the property of the bankruptcy estate, and that post-bankruptcy claims are Thompson's property, but assert that there is "potential ambiguity" regarding when the actions constituting malpractice occurred as well as how to allocate the damages. Not in dispute, however, is that that the claims of deficient representation against defendants stemmed from their execution of Thompson's bankruptcy.

-4-

The trial court held that Gold did not have an actionable interest in the malpractice claim, on the grounds that the bankruptcy estate did not have a property interest in that claim because it accrued after the bankruptcy petition was filed; also, a bankruptcy court order that did not specifically address standing while requiring plaintiffs to cooperate in the malpractice claim and to split any judgments between Thompson and the estate did not provide Gold with standing. We agree with the trial court.

In *In re Blasingame*, 986 F3d 633, 638 (CA 6, 2021), the federal appellate court considered whether a bankruptcy estate, or its individual debtors, "owned" a legal malpractice claim. The court stated that, even though federal bankruptcy law, particularly 11 USC 541, determined the property rights of a bankruptcy estate, the " 'nature and extent of [the] property rights . . . are determined by the underlying [state] substantive law.' " *Id.*, quoting *Raleigh v Illinois Dep't of Revenue*, 530 US 15, 20; 120 S Ct 1951; 147 L Ed2d 13 (2000) (alterations in original). The court thus applied Tennessee law that stated a legal malpractice claim accrued "after the plaintiffs discovered or could have reasonably discovered the malpractice and until after the judgment . . . had become final." The *Blasingame* court concluded that the malpractice claim at issue was not property of the bankruptcy estate because the claim, including activities by the defendant attorney before filing, was "not a legal interest under Tennessee law" when the bankruptcy was filed. *In re Blasingame*, 986 F3d at 641-642.

This Court has also acknowledged that a cause of action that "belong[s] to the debtor prior to bankruptcy" is estate property that the bankruptcy estate is authorized to pursue, and stated that state law is applied to determine whether a particular cause of action was "property of the estate under 11 USC 704(a)(1) and 11 USC 541(a)(1)." *RDM Holdings*, 281 Mich App at 703.

MCL 600.5838(1) provides the following guidance:

Except as otherwise provided in section 5838a or 5838b, a claim based on the malpractice of a person who is, or holds himself or herself out to be, a member of a state licensed profession accrues at the time that person discontinues serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim.

In Michigan, a legal malpractice claim accrues on "the attorney's last day of professional service in the matter out of which the claim for malpractice arose." *Kloian v Schwartz*, 272 Mich App 232, 238; 725 NW2d 671 (2006) (quotation marks and citation omitted).

Applying these principles, the bankruptcy estate, as administered by Gold, was not authorized to pursue a legal malpractice claim concerning Thompson's bankruptcy filing. Defendants continued to represent Thompson during the course of the bankruptcy proceedings. Therefore, the malpractice claim did not accrue until after her filing, which means that the claim did not exist at the time of the filing and thus could not become the property of the estate. Because the instant malpractice claim was not the property of the bankruptcy estate, the estate's trustee, Gold, was not a party in interest in connection with the malpractice claim, and therefore lacked standing to pursue it.

Plaintiffs also argue that the bankruptcy estate was granted standing in this malpractice claim because an order of the bankruptcy court included the following:

> The Trustee and Patricia Thompson shall cooperate with respect to the pursuit and/or prosecution of any legal malpractice claims for damages arising from legal services performed by [defendants] and others on behalf of Patricia Thompson in connection with this bankruptcy case, both pre-petition and post-petition, the net proceeds of which shall be split equally between the bankruptcy estate of Patricia Thompson and Patricia Thompson.

There was no basis in the record for concluding that the bankruptcy court order decided the issue of Gold's standing for this legal malpractice claim. The order did not mention standing, and was not specific to any claim that had been filed. Further, the order addressed cooperation and how to apportion any damages awarded, but it did not state who would file any such claim. Thus, the order did not militate in favor of recognizing Gold's standing here.

## IV. LEGAL MALPRACTICE

Plaintiffs' one-count complaint alleged that defendants committed legal malpractice by failing to disclose cash and property transfers to the bankruptcy court, failing to advise Thompson regarding the consequences of nondisclosure and failing to respond to the trustee's complaint against Thompson that resulted in an order denying Thompson's discharge of debts and a judgment of $9,011 against her. With respect to defendants' motion for summary disposition under MCR 2.116(C)(8), the trial court held:

> Defendants next argue that Thompson's malpractice claim is barred by the wrongful conduct rule because she engaged in criminal conduct during the bankruptcy proceedings. In response, Thompson argues Defendants' argument is premature because it involves factual disputes related to Warr's conduct that cannot be resolved until discovery has been completed.
>
> Under the "wrongful-conduct rule," "Michigan courts have long recognized" that a claim is generally barred to the extent that it is based on the plaintiff's own illegal conduct. *Soaring Pine Capital Real Estate & Debt Fund II, LLC v Park St Group Realty Servs*, *LLC*, 337 Mich App 529, 552; 976 NW2d 674 (2021). To successfully assert the wrongful conduct defense, the plaintiff's conduct "must be prohibited or almost entirely prohibited under a penal or criminal statute." *Orzel v Scott Drug Co*, 449 Mich 550, 561; 537 NW2d 208 (1995). Moreover, "a sufficient causal nexus must exist between the plaintiff's illegal conduct and the plaintiff's asserted damages." *Id.* at 564. The wrongful conduct rule is an affirmative defense; it precludes or forecloses a plaintiff from proceeding for reasons unrelated to their prima facie case, but it does not rebut the prima facie case. *Campbell v St John Hosp.*, 434 Mich 608, 615-616; 455 NW2d 695 (1990). When a complaint contains allegations that establish the affirmative defense, the trial court can dismiss for failure to state a claim upon which relief can be granted. *Glazier v Lee*, 171 Mich App 216, 219-220; 429 NW2d 857 (1988).
>
> The public policy contends that courts should not "condone and encourage illegal conduct," that parties should not "receive a profit or compensation as a result of their illegal acts," and that

rewarding wrongdoers would encourage the public to "view the legal system as a mockery of justice" while enabling "wrongdoers . . . to shift much of the responsibility for their illegal acts to other parties." *Orzel*, 449 Mich at 559-560. The wrongful-conduct bar applies both when the action is based wholly on the plaintiff's own illegal conduct, and when the action is based only partly on the plaintiff's and "the defendant has participated equally in the illegal activity." *Soaring Pine*, 337 Mich App at 552-553. " '[A]s between parties in pari delicto, that is equally in the wrong, the law will not lend itself to afford relief to one as against the other, but will leave them as it finds them.' " *Orzel*, 449 Mich at 558 (alteration in original), quoting 1A CJS, Actions, § 29, p 388.

Notably, *Orzel* involved a jury trial where the plaintiff sued the defendant drug store for negligently supplying the drug Desoxyn, also known as methamphetamine, to which the plaintiff became addicted and caused him to suffer hallucinations, amphetamine psychosis, and paranoid schizophrenia. The plaintiff claimed that the defendant breached common-law and statutory duties owed to him by filling prescriptions written for people other than himself but giving the prescription to the plaintiff and filling the prescriptions more than once a month when they were written for one month's supply. The plaintiff was also obtaining Desoxyn through other illegal transactions, was hospitalized repeatedly for his abuse of the drug, and was deemed legally insane as a result of his drug abuse. The trial court denied several summary disposition motions and the case went to trial where the jury awarded the plaintiff $3.8 million in damages but reduced the verdict to $1.9 million because the plaintiff was comparatively negligent. The trial court granted the defendant's motion for judgment notwithstanding the verdict based on the plaintiff's illegal conduct barring his claim. *Id.* at 555-557.

The *Orzel* Court found that the plaintiff's acts constituted illegal conduct, so application of the wrongful-conduct rule was appropriate. The Supreme Court affirmed the grant of judgment notwithstanding the verdict "[b]ecause none of the limitations or exceptions to the wrongful-conduct rule apply" and the plaintiff's illegal conduct barred his claims against the defendant. This conclusion was reached after extensive factual analysis because the "standard of review for judgments notwithstanding the verdict requires review of the evidence and all legitimate inferences in the light most favorable to the nonmoving party. *Orzel,* 449 Mich at 557. "Only if the evidence so viewed fails to establish a claim as a matter of law, should a motion for judgment notwithstanding the verdict be granted." *Id.* at 558 (citations omitted).

On its face, Thompson's complaint states a claim for legal malpractice, but the complaint also acknowledges the that the bankruptcy court entered a January 13, 2021 judgment denying Thompson's discharge of debts and for a money judgment due to undisclosed non-exempt property. The bankruptcy court's January 13, 2021 Default Judgment[2] stated that a default judgment is entered against Thompson "based upon her failure to timely answer Plaintiff's [Gold's] complaint; it also ordered "that defendant Patricia Ann Thompson's discharge is hereby denied pursuant to 11 USC §§727(a)(4)(A), 727(a)(3), 727(a)(4)(D) and 727(a)(2)(B)."[3] Thus, it

---

[2] United States Bankruptcy Court, Eastern District of Michigan, Southern Division, Chapter 7 Case No. 20-48647-MAR.

[3] 11 USC 727(a)(2) provides as follows:

appears that the bankruptcy court found Thompson intentionally transferred property of the estate and knowingly and fraudulently made a false oath and withheld recorded information.

"[W]here the plaintiff has engaged in illegal conduct, it should be the plaintiff's own criminal responsibility which is determinative." *Orzel*, 449 Mich at 560 (quotation marks and citation omitted). Applicability of the wrongful-conduct rule requires that the plaintiff's conduct was "prohibited or almost entirely prohibited under a penal or criminal statute," and "a sufficient causal nexus must exist between the plaintiff's illegal conduct and the plaintiff's asserted damages." *Id*. at 561, 564.

-----

(a) The court shall grant the debtor a discharge, unless--

(2) [T]he debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed–

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition . . . .

11 USC 727(a) provides as follows:

(a) The court shall grant the debtor a discharge, unless--

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case–

(A) made a false oath or account;

\* \* \*

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs . . . .

In this case, the trial court stated that Thompson's bankruptcy filing violated 18 USC 152(1)-(3), 18 USC 157, and 26 USC 7201, although the bankruptcy court made no factual findings and did not reference these bankruptcy provisions in its January 13 or May 4, 2021 orders. Thompson argues that she did not knowingly and fraudulently conceal her assets, as required to violate 18 USC 152(1)-(3), did not intend to commit fraud under 18 USC 157, and did not willfully attempt to evade taxes under 26 USC 7201. She argues that the facts alleged in the complaint did not support the conclusion that Thompson acted "knowingly and fraudulently" when she signed the bankruptcy filing documents. But, in her complaint, Thompson detailed how she was indebted to multiple commercial lenders, as well as the Internal Revenue Service, had defaulted on her student loans, and had transferred assets to her daughter "in an effort" to "protect her assets from her creditors." She then detailed the asset transfers, and revealed that she rented a transferred property shortly before filing bankruptcy, and received rent from it after filing. Thus, Thompson's statements in her complaint revealed a willing and knowing obfuscation of her assets.

The complaint also stated that certain documentation should have alerted defendants to the transfers of cash and other property to her daughter. Thompson further stated that she continued to collect "receivables and rental income," and transferred more cash to her daughter, after her bankruptcy filing, which were not disclosed in her filings. Thus, Thompson admitted that she endeavored to protect her assets from creditors by alienating them after her bankruptcy filing without disclosing the transfers.

The complaint further reported that, after the bankruptcy trustee filed a complaint asserting that Thompson had improperly failed to disclose, or transferred, assets, and had not provided records as requested, Thompson and defendants failed to respond resulting in the bankruptcy court denying Thompson's discharge of debts, and issued two money judgments against her. Further, Thompson did not argue below, even after defendants raised the wrongful-conduct defense, that she had not committed a crime. Thus, there was no genuine dispute that Thompson's conduct was "prohibited or almost entirely prohibited" according to the criminal statutes the trial court cited. So the first prong of the wrongful conduct rule has been established.

Thompson next argues that her conduct was not the proximate cause of her failure to obtain discharge of her debts, or the monetary judgments against her, in the bankruptcy court. We disagree and conclude that "a sufficient causal nexus [] exist[s] between the plaintiff's illegal conduct and the plaintiff's asserted damages." *Orzel*, 449 Mich at 564. The wrongful-conduct rule applies "only where the illegality or immorality with which plaintiff is chargeable has a causative connection with the particular transaction out of which the alleged cause of action asserted arose." *Orzel*, 449 Mich at 564. The plaintiff's wrongful conduct must have been a proximate cause of her damages. *Shelton v Auto-Owners Ins Co*, 318 Mich App 648, 660-661; 899 NW2d 744 (2017). "The injury must be traceable to [the plaintiff's] own breach of the law and such breach must be an integral and essential part of [the plaintiff's] case." *Cervantes v Farm Bureau Gen Ins Co*, 272 Mich App 410, 417; 726 NW2d 73 (2006).

Thompson specifies that defendants prepared her bankruptcy documents and asserts that they were aware of her transfers of assets to Shelton because they had recently represented Shelton in her own bankruptcy proceedings. Thompson further states that defendants' negligent representation resulted in the deficiencies in Thompson's bankruptcy filings, such as the failure to disclose cash transfers, report receivables from Thompson's business, or to disclose a leasehold in

her primary residence. As noted, according to Thompson's complaint, the bankruptcy court denied Thompson's discharge of debts and ordered her to pay two money judgments. . Thus, there was no genuine dispute that Thompson's own failure to disclose assets and transfers was a proximate cause of her damages.[4]

Thompson argued below, and argues on appeal, that the deficient filings and disclosures were attributable to defendants' actions as they had a duty to properly administer her filing. Thompson cites federal "advice of counsel law" that has not been applied to Michigan legal-malpractice cases.[5] In *Pantely v Garris, Garris & Garris, PC*, 180 Mich App 768, 770-771; 447 NW2d 864 (1989), the legal-malpractice plaintiff made a fraudulent representation in her divorce proceeding regarding her residency before filing her divorce complaint, which eventually resulted in our Supreme Court's setting aside the divorce judgment. The plaintiff admitted her perjury but argued that "there exists a genuine issue of fact as to the relative wrongdoing of herself and her lawyers," and asserted that "she lied at the direction of her attorneys." *Id*. at 775-776. This Court determined that plaintiff's claim against her counsel was barred because, even assuming that counsel advised her to lie, the plaintiff admittedly perjured herself which was not a matter of complex legality. *Id*. at 773-774, 776, 778. Likewise, in this case, Thompson acknowledged that she surreptitiously transferred assets, and concealed financial transactions, for the purpose of protecting them from creditors. And her complaint admitted that the bankruptcy court assessed money judgments against her and denied her request for discharge of debts on the basis of those deceptions. Like the perjury in *Pantely*, the fraudulent or incomplete filings in this case were a fundamental failure of honesty, rather than an error attributable to legal complexity.

Thompson argues that defendants' culpability was greater than hers, thus barring application of the wrongful-conduct rule. "An exception to the wrongful-conduct rule may apply where both the plaintiff and defendant have engaged in illegal conduct, but the parties do not stand in pari delicto." *Orzel*, 449 Mich at 569. The plaintiff, whose illegal acts caused the injury, "may still seek recovery against the defendant if the defendant's culpability is greater than the plaintiff's culpability for the injuries, such as where the plaintiff has acted under circumstances of oppression, imposition, hardship, undue influence, or great inequality of condition or age." *Id*. (quotation marks and citations omitted). Thompson asserted that defendants prepared the bankruptcy filings with full knowledge of the facts, and failed to correct the documents when discharge of her debts was in jeopardy, despite "common law and federal statutory duties to review the debtor's information before filing Thompson's bankruptcy petition, schedules, and statement of financial affairs."

Under the wrongful-conduct rule, a claim "is barred not because the defendant is right, but rather because the plaintiff, being equally wrong, has forfeited any claim to the aid of the court."

---

[4] We note that defendants needed to show that plaintiff's conduct was only "a" proximate cause, not necessarily "the" proximate cause, of her injuries. *Orzel*, 449 Mich at 566-567.

[5] The advice-of-counsel defense requires a finding that there was "(1) full disclosure of all pertinent facts to counsel, and (2) good faith reliance on counsel's advice." *United States v Lindo*, 18 F3d 353, 356 (CA 6, 1994). "The advice of counsel defense is only applicable where it may negate willful violation of the law." *United States v Ragsdale*, 426 F3d 765, 778 (CA 5, 2005).

*Orzel*, 449 Mich at 560. In *Soaring Pine*, 337 Mich App at 556, this Court held that the greater-culpability-by-defendant exception to the wrongful-conduct rule was inapplicable when it was not alleged that the defendant had committed an illegal act. In that case, as in this case, "[p]laintiff has not . . . alleged that defendants acted in a criminal manner, but only tortiously." *Id*. Accordingly, the greater culpability exception does not apply here.

Thompson additionally argues that the trial court erred by applying the wrongful-conduct rule to her legal malpractice claim in light of defendants' having represented both Thompson and her daughter in adversarial proceedings. Again, we disagree.

" '[I]f a complete cause of action can be shown without the necessity of proving the plaintiff's illegal act, the plaintiff will be permitted to recover notwithstanding that the illegal act may appear incidentally and may be important to the explanation of other facts in the case.' " *Poch v Anderson*, 229 Mich App 40, 49; 580 NW2d 456 (1998), quoting 1 Am Jur 2d, Actions, § 45, p 753. Here, Thompson's illegal conduct was independent of any conflict of interest resulting from defendants' representation of both Thompson and her daughter in adversarial proceedings. Indeed, Thompson could set forth a complete legal-malpractice claim based on dual representation without implicating any of her illegal acts relating to her bankruptcy filing.

But, as pleaded, Thompson's allegation of malpractice did not relate to defendants' potentially conflicted representation of both herself and her daughter. The complaint asserted that defendants represented Shelton in an adversarial proceeding filed by Gold, and that Gold successfully moved the bankruptcy court to disqualify defendants from representing Shelton because of the dual representation. As discussed, the complaint reported that the bankruptcy court denied Thompson's discharge of debts, and issued money judgments against her on the bankruptcy trustee's complaint alleging Thompson improperly concealed or transferred assets and failed to provide requested records. The malpractice allegations did not include a conflict of interest or other breach of the duty of loyalty. The damages alleged in the complaint were entirely attributable to the bankruptcy court's rulings resulting from Gold's unaddressed complaints about Thompson's nondisclosures and disposal of assets, and incomplete records. And because Thompson did not argue below that a valid conflict-of-interest claim existed, the trial court did not address any such claim in its opinion and order. The record thus does not indicate that Thompson claimed legal malpractice, or sought damages, on the basis of defendants' conflict of interest. See *Simko v Blake*, 448 Mich 648, 655; 532 NW2d 842 (1995) (a claim for legal malpractice must allege negligence in legal representation that was the proximate cause of an injury, along with "the fact and extent of the injury alleged").

For these reasons, we hold that the wrongful conduct rule barred Thompson's claim for legal malpractice based on Thompson's own illegal conduct demonstrated on the face of Thompson's complaint, *Glazier*, 171 Mich App at 219-220, , and we thus conclude that the trial court properly dismissed Thompson's complaint because it failed to state a claim upon which relief could be granted.

Affirmed.

/s/ James Robert Redford
/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney