RECOMMENDED FOR PUBLICATION
File Name: 22b0001p.06

# BANKRUPTCY APPELLATE PANEL

## OF THE SIXTH CIRCUIT

IN RE:  HOWARD D. JUNTOFF;

IN RE: GEORGE J. MCPHERSON and MELANIE A. MCPHERSON,

*Debtors*.

Nos. 21-8011/8012

INTERNAL REVENUE SERVICE,

*Creditor-Appellant*,

*v.*

HOWARD D. JUNTOFF (21-8011); GEORGE J. MCPHERSON and MELANIE A. MCPHERSON (21-8012),

*Debtors-Appellees*.

On Appeal from the United States Bankruptcy Court
for the Northern District of Ohio at Cleveland.

Nos. 1:19-bk-17032 (21-8011); 1:20-bk-13035 (21-8012)—Arthur I. Harris, Judge.

Argued:  February 2, 2022

Decided and Filed:  March 21, 2022

Before:  CROOM, DALES, and STOUT, Bankruptcy Appellate Panel Judges.

_____

## COUNSEL

**ARGUED:**  Marie E. Wicks, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant.  Marcel C. Duhamel, VORYS, SATER, SEYMOUR AND PEASE LLP, Cleveland, Ohio, for Appellees.  **ON BRIEF:**  Marie E. Wicks, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant.  Marcel C. Duhamel, VORYS, SATER, SEYMOUR AND PEASE LLP, Cleveland, Ohio, Joseph M. Romano, THE ROMANO LAW FIRM, Cleveland, Ohio, for Appellees.

STOUT, J., delivered the opinion of the court in which CROOM, J., joined.  DALES, C.J. (pp. 24–28), delivered a separate dissenting opinion.

*In re Juntoff*
*In re McPherson*

---

**OPINION**

---

ALAN C. STOUT, Bankruptcy Appellate Panel Judge. In this consolidated appeal arising from two separate Chapter 13 cases, Debtors/Appellees (collectively "Debtors") objected to priority unsecured claims that Creditor/Appellant United States of America on behalf of the Internal Revenue Service ("IRS") filed based on Debtors' failure to pay the "shared responsibility payment" ("SRP") for failing to obtain health insurance as required under the "individual mandate" within the Patient Protection and Affordable Care Act of 2010 (the "ACA").[1] The bankruptcy court sustained Debtors' objections in both cases, determining that the SRP is not "a tax on or measured by income or gross receipts" or "an excise tax on . . . a transaction" entitled to priority treatment under either § 507(a)(8)(A) or (E).[2] The IRS now appeals the bankruptcy court's decision. For the reasons stated below, the bankruptcy court's decision is **REVERSED**.

**STATEMENT OF ISSUES ON APPEAL**

The IRS raises several issues on appeal:

1. Whether the bankruptcy court erred in holding that the shared responsibility payment is not entitled to priority treatment under § 507(a)(8)(A) as a tax on or measured by income or gross receipts.

2. Whether the bankruptcy court erred in holding that the shared responsibility payment is not entitled to priority treatment under § 507(a)(8)(E) as an excise tax on a transaction.

3. Whether the bankruptcy court erred in sustaining the Debtors' objection to IRS Claim 8 (*McPherson*) and IRS Claim 3 (*Juntoff*).

(Br. of Appellant United States of America at 2, B.A.P. Case No. 21-8011, ECF No. 15 ("IRS Br.").)

---

[1] 26 U.S.C. § 5000A (Pub. L. No. 111-148, 124 Stat. 119) (Mar. 23, 2010), as modified by the subsequently enacted Health Care and Education Reconciliation Act, Pub. L. No. 111-152, 124 Stat. 1029 (Mar. 30, 2010).

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

## JURISDICTIONAL STATEMENT

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide these consolidated appeals. The IRS initially elected to have the United States District Court for the Northern District of Ohio hear the appeals. (Bankr. Case No. 19-17032, ECF No. 97; Bankr. Case No. 20-13035, ECF No. 72). However, on June 16, 2021, the district court granted the IRS's motion (to which Debtors consented) to transfer the appeal to this Panel. (Bankr. Case No. 19-17032, ECF No. 118; Bankr. Case No. 20-13035, ECF No. 81). The United States District Court for the Northern District of Ohio has authorized this Panel to hear and determine appeals from the district's bankruptcy court in accordance with 28 U.S.C. § 158(b)(6).

Under 28 U.S.C. § 158(a)(1), this Panel has jurisdiction to hear appeals "from final judgments, orders, and decrees" issued by a bankruptcy court. "Orders in bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes within the overarching bankruptcy case." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020) (citing *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501, 135 S. Ct. 1686, 1691 (2015)). An order sustaining an objection to a creditor's claim is a final order. *In re Bowers*, 506 B.R. 249, 251 (B.A.P. 6th Cir. 2013), *aff'd*, 759 F.3d 621 (6th Cir. 2014).

## STANDARD OF REVIEW

This appeal solely presents issues of law, reviewed *de novo*. *Mich. Unemployment Ins. Agency v. Boyd* (*In re Albion Health Servs.*), 360 B.R. 599, 601 (B.A.P. 6th Cir. 2007) ("An order determining that a claim is not entitled to priority status is a question of law requiring *de novo* review on appeal."); *see also Church Joint Venture, L.P. v. Blasingame* (*In re Blasingame*), 986 F.3d 633, 638 (6th Cir. 2021) (stating a bankruptcy court's legal conclusions are reviewed *de novo*). "De novo review requires the Bankruptcy Appellate Panel to interpret statutes independently of the determination of the bankruptcy court." *Rudnicki v. S. Coll. of Optometry* (*In re Rudnicki*), 228 B.R. 179, 180 (B.A.P. 6th Cir. 1999) (citing *Nat'l City Bank v. Elliott* (*In re Elliott*), 214 B.R. 148, 149 (B.A.P. 6th Cir. 1997)); *see also Plymouth Park Tax Servs., LLC v. Bowers* (*In re Bowers*), 759 F.3d 621, 625 (6th Cir. 2014) (citation omitted) ("*De novo* review

requires the appellate court to determine the law at issue independently of the Bankruptcy Court's determination.").

## FACTS

No one disputes the facts underlying these appeals.

The ACA requires non-exempt individuals either to maintain a minimum level of health insurance or to pay a "penalty." 26 U.S.C. § 5000A. In tax years 2017 and 2018,[3] the ACA provided that non-exempt individuals who did not have "minimum essential coverage" for one or more months had to make a "shared responsibility payment" with their annual federal tax payment. 26 U.S.C. § 5000A(b)(1). The monthly SRP amount owed equaled 1/12 of the greater of either a flat dollar amount or 2.5% of the taxpayer's taxable income (for taxable years beginning after 2015). 26 U.S.C. § 5000A(c)(2)(A), (B)(iii). Under paragraph (3) of subsection (c), the amount used to compute the flat dollar amount in paragraph (2)(A) was $695. 26 U.S.C. § 5000A(c)(3) *as amended by* Pub. L. No. 111-152, § 1002, 124 Stat. 1029 (2010). If the taxpayer's income fell below a certain threshold, the flat dollar amount would be higher than 2.5% of the taxable income, and the SRP then would be the flat dollar amount and not a percentage of the taxpayer's income.

Despite the "individual mandate," Debtors George and Melanie McPherson ("McPhersons") did not maintain health insurance for nine months of the year in 2017, and Debtor Howard Juntoff ("Juntoff") did not maintain health insurance in any month in 2018. They also did not pay their SRP obligations. Debtors' SRP liabilities are based on the number of months during which they lacked health insurance.

Juntoff filed a bankruptcy petition under Chapter 13 in 2019, and the McPhersons filed a Chapter 13 petition in 2020. In each case, the IRS filed, and subsequently amended, proofs of claim reflecting Debtors' failure to pay the SRP. In each case, the IRS's last amended proof of claim sought priority treatment as an "excise/income tax."

---

[3]Congress amended § 5000A to reduce the SRP to zero for tax years beginning after December 31, 2018. Pub. L. No. 115-97, § 11081, 131 Stat. 2054, 2092 (2017). All ACA citations herein are to the pre-amendment version.

More specifically, in the *Juntoff* case, IRS Proof of Claim 3-4 asserted that Juntoff's SRP-related liability for calendar year 2018 consisted of an SRP amount of $1,016, plus prepetition interest of $26.39, for a total of $1,042.39. Juntoff self-reported his SRP on his 2018 Form 1040 individual income tax return as $1,016, which equaled 2.5% of his 2018 taxable income of $40,629. Juntoff filed his 2018 Form 1040 under the single filing status, claiming the standard deduction for single taxpayers of $12,000. Because Juntoff reported a single filing status, his flat dollar amount option was $695. His adjusted gross income was $52,629.00, and after subtracting the $12,000 standard deduction for single filing status (Juntoff did not claim any tax-exempt interest or dependents), his taxable income was $40,629.00.[4] Juntoff's taxable income of $40,629.00 multiplied by 2.5% equaled $1,015.73 for twelve months, consistent with his self-reported SRP of $1,016. According to the 2018 Instructions, the National Average Bronze Plan Premium insurance payment for one person was $3,396.[5] Juntoff's SRP amount, therefore, resulted from first choosing the larger of $695 or $1,016 (which was $1,016), and then selecting the lesser of $1,016 or $3,396, which yielded $1,016 as the SRP amount (not including the pre-petition interest of $26.39).

In the *McPherson* case, IRS Proof of Claim 8-4 asserted that their SRP-related liability for calendar year 2017 consisted of an SRP amount of $1,564, plus prepetition interest of $136.70, for a total of $1,700.70. The McPhersons self-reported their SRP on their 2017 Form 1040 individual income tax return, and the amount of $1,564 equals the SRP flat dollar amount for the nine months of 2017 during which they did not maintain minimum health insurance coverage.[6] The McPhersons filed their 2017 Form 1040 under the married filing jointly filing status, claiming itemized deductions of $15,634, and claiming two dependents. Because the McPhersons filed a joint return, their flat dollar amount option was $1,564, or $173.75 per month

---

[4]*See Instructions for Form 8965: Health Coverage Exemptions* (*and Instructions for Figuring Your Shared Responsibility Payment*), 2017 Instructions for Form 8965, IRS (Dec. 20, 2017), https://www.irs.gov/pub/irs-prior/i8965--2017.pdf [https://perma.cc/HC73-V9H5] ("2017 Instructions"); 2018 Instructions for Form 8965, IRS (Dec. 18, 2018), https://www.irs.gov/pub/irs-prior/i8965--2018.pdf [https://perma.cc/4KBE-PJHQ] ("2018 Instructions").

[5]*See* 2018 Instructions at 18.

[6]According to information received from the IRS, the McPhersons held minimum health insurance for three months of 2017; thus, their SRP amount derived from the nine months during which they lacked minimum health insurance. (*In re McPherson*, Bankr. Case No. 20-13035, ECF No. 56, Exhibit B, IDRS Form 1095.)

for nine months, consistent with their self-reported SRP. Their adjusted gross income was $74,073.00, minus the amount associated with the "married filing jointly" filing status of $20,800,[7] for a difference of $53,273.00. Multiplied by 2.5% and then divided by twelve, the McPhersons' monthly percentage income amount was $110.99. That monthly payment, multiplied by nine, equaled $998.87 (rounded up to $999). According to the 2017 Instructions, the National Average Bronze Plan Premium for 4 people was $13,056.[8] The McPhersons' SRP amount, therefore, resulted from choosing the larger of $1,564 or $999 (which was $1,564), and then selecting the lesser of $1,564 or $13,056, which yielded $1,564 as the SRP amount (not including the prepetition interest of $136.70).

Debtors objected to the IRS's claims in both cases, arguing that the SRP debt was not entitled to priority treatment. Before the bankruptcy court ruled on these objections, it confirmed a Chapter 13 plan in each case. The court confirmed the McPhersons' Chapter 13 plan in November 2020, which provided for payment in full of all allowed priority claims and projected distributions to general unsecured creditors that would pay approximately 22% of their claims. In March 2021, the court confirmed Juntoff's second amended plan, which provided for payment in full of all priority unsecured claims and no distributions to general unsecured claims. On April 15, 2021, after multiple rounds of briefing and several hearings, the bankruptcy court issued a consolidated memorandum opinion sustaining Appellees' objections and entered a consistent order in each case. The IRS timely appealed.

## DISCUSSION

### I. Statutory Framework.

A Chapter 13 debtor must have a plan confirmed that, among other things, pays all claims entitled to priority under § 507 in full, unless the claimholder consents to different treatment. 11 U.S.C. § 1322(a)(2). The IRS contends that Debtors must treat its claims as priority tax claims in their chapter 13 plans in accordance with § 507(a)(8), which provides in pertinent part:

---

[7]*See* 2017 Instructions at 16.

[8]*Id.* at 17.

(a) The following expenses and claims have priority in the following order:

. . . .

(8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition . . . .

[or]

(E) an excise tax on—

(i) a transaction occurring before the date of the filing of the petition[.]

11 U.S.C. § 507(a)(8)(A), (E).[9]  A creditor's tax claim that does not qualify for priority under § 507(a)(8) should be treated as a general unsecured claim.  *See, e.g.*, *In re Albracht*, 617 B.R. 851, 857 (Bankr. E.D.N.C. 2020) (holding portion of claim from SRP is not entitled to priority and directing "[t]he portion of the Claim relating to the SRP . . . shall be removed from the portion of the Claim entitled to priority and added to the general unsecured portion of the Claim[.]").

A party seeking priority treatment of its claim under § 507(a) has the burden of proof on its entitlement to such treatment.  *Rockstone Capital LLC v. Metal*, 508 B.R. 552, 559 (E.D.N.Y. 2014) (citing, *inter alia*, *In re Micek*, 473 B.R. 185, 188 (Bankr. E.D. Ky. 2012) (holding that the claimant must establish entitlement to priority by a preponderance of the evidence)).  When considering whether a claim is entitled to priority, a court "must be mindful of the Bankruptcy Code objective of securing equal distribution among creditors and 'the complementary principle that preferential treatment of a class of creditors is in order only when clearly authorized by Congress.'"  *Albion Health Servs.*, 360 B.R. at 604 (quoting *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 655, 126 S. Ct. 2105, 2109 (2006)).  However, "[i]t is common for Congress to prefer Government creditors over private creditors[.]"  *Howard Delivery*, 547 U.S. at 666 (citing *Travelers Prop. Cas. Corp. v. Birmingham-Nashville Express, Inc. (In re Birmingham-Nashville Express, Inc.)*, 224 F.3d 511, 518 (6th Cir. 2000) ("It is quite

---

[9]Both § 507(a)(8)(A) and (E) provide that the tax at issue must first become due within three years of the petition date to qualify for priority treatment; the IRS's exaction in each case satisfies this requirement.

common for Congress to provide better treatment in the Bankruptcy Code for government creditors than is provided for private creditors.")).

## II.        The SRP is a "Tax" for Purposes of § 507(a)(8).

The bankruptcy court did not determine whether the SRP is a tax eligible for priority treatment under § 507(a)(8) or an ineligible penalty. Instead, the court focused its attention on whether the SRP is the kind of tax entitled to priority treatment under the Bankruptcy Code without determining whether or not the SRP is even a tax. Ultimately, the court held that the SRP is not entitled to priority treatment under the Bankruptcy Code. *In re Juntoff*, Case No. 19-17032, Case No. 20-13035, 2021 WL 1522206, at *6 (Bankr. N.D. Ohio April 15, 2021) (emphasis added) ("As explained more fully below, the Court holds that the shared responsibility payment is neither "a tax on or measured by income or gross receipts" nor "an excise tax on . . . a transaction" within the meaning of § 507(a)(8)(A) or (E) of the Bankruptcy Code, *even assuming it functions as a tax*.")

The parties' appellate briefs do address the initial question—whether the SRP is a tax, and present opposing arguments on this issue. The IRS contends that the Supreme Court already held that the SRP is a tax in *National Federation of Independent Business v. Sebelius*, 567 U.S. 519, 566, 132 S. Ct. 2566, 2595 (2012), and, as such, that *Sebelius* is controlling. (IRS Br. at 13.) Alternatively, the IRS contends that applying Sixth Circuit precedent on how to assess whether an exaction is a tax leads to the same conclusion. (*Id.* at 17.) Debtors contend that *Sebelius* is non-binding, and that pertinent authority confirms that, under the Bankruptcy Code, the SRP is a penalty imposed on any person who fails to buy health insurance and is not otherwise exempt under a statutory exclusion, not a tax. (Br. of Appellees at 4, B.A.P. Case No. 21-8011, ECF No. 17 ("Debtors' Br.").)

### A.        The *Sebelius* Decision is not Binding as to Whether the IRS's SRP-Related Claims are Entitled to Priority Treatment under the Bankruptcy Code.

The Supreme Court has explained that a court should apply a "functional examination" to determine whether an exaction in the Internal Revenue Code should be considered a tax entitled to priority under § 507(a)(8). *United States v. Reorganized CF&I Fabricators of Utah, Inc.*,

518 U.S. 213, 224, 116 S. Ct. 2106, 2113 (1996). The Court in *CF&I* explained the "functional"

approach as follows:

> *Anderson* and *New York* applied the same test in determining whether an exaction
> was a tax under § 64(a) [of the Bankruptcy Act of 1898], or a penalty or debt: "a
> tax is a pecuniary burden laid upon individuals or property for the purpose of
> supporting the Government." [*New Jersey v. Anderson*, 203 U.S. 483, 492, 27 S.
> Ct. 137, 140 (1906)]; [*United States v. New York*, 315 U.S. 510, 515, 62 S. Ct.
> 712, 714 (1942)]; *accord*, [*City of New York v. Feiring*, 313 U.S. 283, 285, 61 S.
> Ct. 1028, 1029 (1941)] ("§ 64 extends to those pecuniary burdens laid upon
> individuals or their property . . . for the purpose of defraying the expenses of
> government or of undertakings authorized by it"). Or, as the Court noted in a
> somewhat different context, "[a] tax is an enforced contribution to provide for the
> support of government; a penalty, as the word is here used, is an exaction imposed
> by statute as punishment for an unlawful act." *United States v. La Franca*,
> 282 U.S. 568, 572, 75 L. Ed. 551, 75 L. Ed. 551, 51 S. Ct. 278 (1931).
>
> We take *La Franca*'s statement of the distinction to be sufficient for the decision
> of this case; if the concept of penalty means anything, it means punishment for an
> unlawful act or omission, and a punishment for an unlawful omission is what this
> exaction is.

518 U.S. at 224.

More recently, when considering the ACA's constitutionality in *Sebelius*, the Supreme

Court also applied a "functional approach" in reaching its conclusion that "the shared

responsibility payment may for constitutional purposes be considered a tax, not a penalty[.]"

*Sebelius*, 567 U.S. at 565-66. The *Sebelius* Court cited *CF&I* and *La Franca* to support its

conclusion:

> In distinguishing penalties from taxes, this Court has explained that "if the
> concept of penalty means anything, it means punishment for an unlawful act or
> omission." *United States v. Reorganized CF&I Fabricators of Utah, Inc.*,
> 518 U.S. 213, 224, 116 S. Ct. 2106, 135 L. Ed. 2d 506 (1996); *see also United*
> *States v. La Franca*, 282 U.S. 568, 572, 51 S. Ct. 278, 75 L. Ed. 551 (1931) ("[A]
> penalty, as the word is here used, is an exaction imposed by statute as punishment
> for an unlawful act"). While the individual mandate clearly aims to induce the
> purchase of health insurance, it need not be read to declare that failing to do so is
> unlawful. Neither the Act nor any other law attaches negative legal consequences
> to not buying health insurance, beyond requiring a payment to the IRS.

*Id.* at 567-68.

The IRS contends that the Supreme Court in *Sebelius* reached "beyond 26 U.S.C. § 5000A's characterization of the SRP as a 'penalty' and considered instead 'its substance and application' to conclude that the SRP was a tax and a constitutional exercise of Congress's taxing authority." (IRS Br. at 12 (citing *Sebelius*, 567 U.S. at 565).) The IRS posits that *Sebelius* determined, notwithstanding the SRP's "penalty" label in the Internal Revenue Code, that the SRP did not operate as a penalty, but rather as a tax which citizens may lawfully choose to pay in lieu of buying health insurance. (*Id*.) The IRS concludes that, because the Court already decided that the SRP is a tax under a functional analysis, the Court's analysis in *Sebelius* is controlling. (*Id*. at 13).

Debtors contend that the IRS misconstrues *Sebelius*, in that whether the SRP is a tax for constitutional purposes has no bearing on whether it is a tax for purposes of the Bankruptcy Code's priority scheme. (Debtors' Br. at 4.) Debtors draw on other aspects of the *Sebelius* opinion to distinguish the case, explaining that the Court perhaps reached a reasonable interpretation of the ACA and the accompanying SRP, but "not necessarily the best interpretation." (*Id*. at 16-17 (footnotes omitted).)

The Panel agrees with Debtors that *Sebelius* is not dispositive on the tax/penalty question based on the opinion's context. *Sebelius* concerned whether Congress had the constitutional authority to enact the ACA given its inclusion of the individual mandate and SRP. Before reaching that issue, the Supreme Court first considered whether the Anti-Injunction Act, 26 U.S.C. § 7421(a), barred a review on the merits.[10] The Supreme Court concluded that the Anti-Injunction Act did not bar evaluation of the ACA's constitutionality because Congress called the SRP a penalty and not a tax, and the Anti-Injunction Act only applied to the review of tax assessments. *Sebelius*, 567 U.S. at 543; *see also id.* at 564 ("It is up to Congress whether to apply the Anti-Injunction Act to any particular statute, so it makes sense to be guided by Congress's choice of label on that question."). After reaching this conclusion, the Court then considered whether Congress could permissibly enact the ACA, including the individual

---

[10]The Fourth Circuit had refused to assess the ACA's constitutionality based on the Anti-Injunction Act and the procedural posture of the case before that court. *Liberty Univ., Inc. v. Geithner*, 671 F.3d 391 (4th Cir. 2011).

mandate and SRP, under its taxing power. The Court performed a "functional examination" of the SRP as a component of the individual mandate and concluded that Congress' taxing power afforded it the constitutional authority to enact these provisions. *Id*. at 561-74. In other words, the Court determined that the SRP constituted a "penalty" for purposes of an Anti-Injunction Act analysis and a "tax" under a constitutionality analysis.

To explain this dichotomy, the *Sebelius* Court clarified that the question presented on constitutionality was not whether the SRP was *better* construed as a tax or a penalty, but rather whether the SRP could *possibly* be construed as a tax to permit a finding that Congress had the authority to enact the ACA. *Id*. at 562 (quoting *Blodgett v. Holden*, 275 U.S. 142, 148, 48 S. Ct. 105, 107 (1927) (Holmes, J., concurring) ("[T]he rule is settled that as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that which will save the Act.")); *see also Bradford v. United States, Dep't of the Treasury* (*In re Bradford*), 534 B.R. 839, 854 (Bankr. M.D. Ga. 2015) ("[t]he question before the [*Sebelius*] Court was whether it was 'fairly possible' to interpret the mandate as merely a trigger for a tax payment (which would be sustainable under Congress's taxing power), rather than as an absolute command subject to criminal sanctions (which would render it unsupportable under the taxing power).").

This qualification in the *Sebelius* opinion undercuts the argument that the *Sebelius* Court concluded that the SRP is a tax for present purposes, and that such conclusion binds this Panel. With that said, as discussed below, the *Sebelius* decision does offer a distinction between a penalty and a tax for purposes of priority under the Bankruptcy Code of which this Panel must take heed.

### B.     The SRP is a "Tax" Under Sixth Circuit Authority.

To resolve whether an exaction is a "tax" or a "penalty" for purposes of the Bankruptcy Code, the Sixth Circuit requires a court to "engag[e] in a 'functional examination' of the applicable statutory scheme to determine whether it falls within the federal statutory definition." *Rizzo v. Mich. Dep't of Treasury* (*In re Rizzo*), 741 F.3d 703, 705 (6th Cir. 2014) (citing *CF&I, Inc.*, 518 U.S. at 224). When performing the examination, "the statutory labels of the exaction

are not dispositive; the court must instead evaluate the statute's 'actual effects to determine whether it functions as either a tax or else as some different kind of obligation.'" *Id*. (quoting *Boston Reg'l Med. Ctr., Inc. v. Mass. Div. of Health Care Fin. & Policy*, 365 F.3d 51, 58 (1st Cir. 2004)).

In the context of a priority analysis under § 507, the Panel in *Albion Health Services* explained the Sixth Circuit's "functional examination" test as follows:

> Applying the principles articulated in *Anderson* and *Feiring*, other courts have added glosses to the Supreme Court's description of what exactions qualify as 'taxes' for priority purposes in the bankruptcy context.  The Ninth Circuit set forth a frequently cited four-prong test for determining whether a particular exaction should be characterized as a tax for bankruptcy priority purposes:
>
> > (a) An involuntary pecuniary burden, regardless of name, laid upon individuals or property;
> >
> > (b) Imposed by, or under authority of the legislature;
> >
> > (c) For public purposes, including the purposes of defraying expenses of government or undertakings authorized by it;
> >
> > (d) Under the police or taxing power of the state.
>
> *County Sanitation Dist. No. 2 v. Lorber Indus. of Cal., Inc.* (*In re Lorber Indus. of Cal., Inc.*), 675 F.2d 1062, 1066 (9th Cir. 1982).
>
> The Sixth Circuit has criticized the Lorber test as insufficient in distinguishing taxes from other types of payments owed the government, such as fees for service or criminal or civil penalties. *See Yoder v. Ohio Bureau of Workers' Comp.* (*In re Suburban Motor Freight, Inc.*), 998 F.2d 338 (6th Cir. 1993) ("*Suburban I*"); *Ohio Bureau of Workers' Comp. v. Yoder* (*In re Suburban Motor Freight, Inc.*), 36 F.3d 484 (6th Cir. 1994) ("*Suburban II*").  The court noted that "the test, in particular its 'public purpose' requirement, did not limit in any meaningful way the circumstances under which government claims would be entitled to priority" since "all money collected by the Government goes toward defraying its expenses, and is used for public purposes." *Suburban II*, 36 F.3d at 488.  Thus, "to say as a matter of definition that all taxes are collected for public purposes does not allow the Government to say that all funds collected for public purposes are taxes. . . ." *Suburban I*, 998 F.2d 338, 342 (6th Cir. 1993).  While the Sixth Circuit agreed that satisfaction of the Lorber test is necessary to qualify a claim for priority treatment as an excise tax, it identified two additional factors that refine the public purpose element: "(1) that the pecuniary obligation be universally applicable to similarly situated entities; and (2) that according priority

treatment to the government claim not disadvantage private creditors with like claims." *Suburban II*, 36 F.3d at 488.

360 B.R. at 605-606. The parties agree that the *Lorber/Suburban I/Suburban II* cases (setting forth the "*Lorber/Suburban* test") provide the "functional examination" framework in this Circuit.

> Applying the *Lorber/Suburban* test, the IRS argues that the SRP is a tax:
>
> The SRP is an involuntary pecuniary burden instituted by Congress for a public purpose, that is, encouraging taxpayers to purchase minimum essential healthcare coverage and reducing the cost of health insurance for the general public. *See* Pub. L. No. 111-148, § 1501(a)(2)(H), 124 Stat. 119, 243 (2010) (stating that the "shared responsibility" requirement of maintaining minimum essential coverage will "lower health insurance premiums" by increasing the number of those insured); *see also Szczyporski*, [531 F. Supp. 3d 934, 940 (E.D. Pa. 2021)]. Congress implemented the SRP as part of its taxing authority. *Sebelius*, 567 U.S. at 574. Further, the SRP liability is "universally applicable to similarly situated entities" because it is a payment that is required of all otherwise "applicable individuals" who fit the criteria of 26 U.S.C. § 5000A and choose to not be covered by health insurance for one or more months out of the year. 26 U.S.C. § 5000A(b)(1). And allowing the Internal Revenue Service's claim for the SRP liability to have priority status would not "disadvantage private creditors with like claims" because there are no private creditors with like claims. *See, e.g.*, *In re Jones*, 610 B.R. 663, 667 (Bankr. D. Mont. 2019) ("[S]ince the SRP is strictly a function of federal statute, a private creditor cannot be hypothesized who is similarly situated to the IRS."); *see also Szczyporski*, [531 F. Supp. 3d at 940] (citing *Jones*, 610 B.R. at 667). Thus, the SRP meets all of the Sixth Circuit's requirements for treating an exaction as a tax in bankruptcy.

(IRS Br. at 16.)

Debtors challenge only one aspect of the IRS's application of the *Lorber/Suburban* test. Debtors do not dispute that the SRP is an involuntary pecuniary burden imposed on individuals by Congress under its taxing authority for the public purposes of expanding health insurance and defraying the costs of healthcare.[11] The four *Lorber* elements are satisfied. Debtors also do not

---

[11]Our colleague's separate dissenting opinion (the "Dissent") makes an argument that Debtors did not make. It notes that the majority opinion in *Sebelius* states that the ACA "merely imposes a tax citizens may lawfully choose to pay in lieu of buying health insurance" (*Sebelius*, 567 U.S. at 567), and contends that this statement "undercuts the characterization of the SRP as an 'involuntary exaction.'" (Dissent at 27.) That a taxpayer in 2017 or 2018 could opt to pay the SRP rather than maintain insurance does not render the SRP a "voluntary exaction."

dispute that according priority treatment to the IRS's claim does not disadvantage private creditors with like claims as the SRP operates purely as a federal statutory function such that no private creditors similarly situated to the IRS can be envisioned. *Jones*, 610 B.R. at 667; *Szczyporski*, 531 F. Supp. at 940. The sole disputed *Lorber/Surburban* element to consider for purposes of finding the SRP to be a "tax," then, is whether the SRP is a pecuniary obligation universally applicable to similarly situated entities.

Debtors assert that the SRP is not universally applicable to similarly situated entities because the Secretary of Health and Human Services ("HHS"), "a non-taxing authority," was delegated "broad discretion to grant hardship exemptions from the SRP" including for:

> homelessness, eviction, foreclosure, utility shut-off notices, domestic violence, the death of a family member, natural or human-caused disasters, bankruptcy (within the last two years), unpaid medical expenses resulting in substantial debt, expenses due to caring for an ill, disabled or aging family member and—notably—any other hardship not listed. *See generally* Healthcare.gov Hardship Instructions.

(Debtors' Br. at 19-20.) Debtors argue it is difficult to see how the SRP is anything other than discretionary given the "breadth" of these exemptions. (*Id.* at 20.)

The only authority that Debtors cite for the proposition that an exaction is not a "universally applicable" tax if discretion in its collection applies is an out-of-circuit district court decision related to Massachusetts' workers' compensation scheme. *Workers' Comp. Tr. Fund v. Saunders*, 234 B.R. 555, 565 (D. Mass. 1999). In *Saunders*, a debtor-entity failed to maintain required workers' compensation insurance. The state workers' compensation trust fund thus paid an injured worker's claim and filed a priority claim in the debtor's bankruptcy case to recover the amount it paid on the worker's claim. The bankruptcy court granted the Chapter 7 trustee's objection to the claim's priority treatment and the district court affirmed.

---

Rather, federal law imposed on non-exempt taxpayers an obligation to either maintain health insurance or pay the SRP. The ACA "makes going without insurance just another thing the Government taxes, like buying gasoline or earning income." *Sebelius*, 567 U.S. at 563. Or, stated differently, the Court labeled the SRP "a burden that the Federal Government imposes for an omission" (*id.* at 571); and a "voluntary act" is seldom a "burden" that a government "imposes." Certainly, the record does not reflect that Debtors considered it a "voluntary act" to pay an exaction to the IRS totaling hundreds of additional dollars for the SRP.

The district court agreed that the claim was not entitled to priority based on the language of the state's workers' compensation statute, which provided that a state agency "'*may* seek recovery from the uninsured employer for an amount equal to the amount paid on behalf of the claimant under this chapter, plus any necessary and reasonable attorney fees.'"  *Id*. at 565 (quoting Mass. Gen. Laws ch. 152, § 65(8)).  The court held that the statute afforded broad discretion to a state agency sufficient to render it not "universally applicable" because it "allows for different treatment among the members of the class of uninsured employers for whom the [trust fund] pays claims, depending on how the commissioner of DIA exercises his discretion— that is, whether he elects or declines to pursue a particular uninsured employer for whom WCTF has paid a claim." *Id*.  In other words, the state statute granted, and did not constrain in any way, the exercise of the agency's discretion in seeking to collect this exaction; the DIA commissioner could choose which specific uninsured employers to pursue or leave alone without any statutory guidance.

In contrast to the statutory language at issue in *Saunders*, Debtors offer only a vague reference to the Healthcare.gov website to support their argument that hardship exemptions render the SRP a discretionary exaction that is not universally applicable.  Debtors do not explain how they reach the conclusion that the ACA grants HHS "broad discretion" to grant hardship exemptions.  While § 5000A(e) provides for five categories of exemptions from the SRP— including for taxpayers with income below the filing threshold, for members of Indian tribes, and for taxpayers with "hardships" as determined by the Secretary of Health and Human Services— the statutory language itself does not afford "broad discretion" to HHS to determine when such a hardship exists.[12]  In fact, a federal regulation provides substantive standards regarding taxpayer

---

[12]The statute provides:

> (e) Exemptions. No penalty shall be imposed under subsection (a) with respect to—

> (5) Hardships. Any applicable individual who for any month is determined by the Secretary of Health and Human Services under section 1311(d)(4)(H) to have suffered a hardship with respect to the capability to obtain coverage under a qualified health plan.

26 U.S.C. § 5000A(e)(5).  The reference to section 1311(d)(4)(H) is a reference to the Public Law version of the ACA, Pub. L. No. 111-148.  Section 1311 of the ACA creates and delegates authority and obligations to health insurance exchanges.  Section 1311(d)(4)(H) provides that an exchange must grant certifications that individuals are exempt from responsibility for paying the SRP.  This portion of the Public Law is codified at 42 U.S.C.

eligibility for a hardship exemption and thereby limits agency "discretion." *See* 45 CFR 155.605(d). The Panel finds *Saunders* inapposite.

Moreover, the Panel concludes that "universality" is considered at the point at which the exaction is levied. Put another way, the exaction is universally applicable to all persons who are in a position to be subject to the exaction, not including those individuals to whom an exemption would apply. *See, e.g.*, *In re Carpenter*, 519 B.R. 811, 818 (Bankr. D. Mont. 2014) (citation omitted) (finding "the obligation at issue meets the two additional elements articulated by the *Suburban I* Court . . . in that the particular assessment is universally applicable to similarly situated officers in that all officers who are responsible for paying the taxes, interest and penalties of corporations are liable for such taxes, interest and penalties."); *see also Bos. Reg'l Med. Ctr., Inc. v. Mass. Div. of Health Care Fin. & Policy* (*In re Bos. Reg'l Med. Ctr., Inc.*), 365 F.3d 51, 62 (1st Cir. 2004) (citations omitted) (applying *Lorber/Suburban* test and concluding "universality" is satisfied when those subject to the exaction at issue (acute care hospitals) were "subject to the same rules" such that "acute hospitals with the same financial profiles in any given year will have the same liability"). In this instance, "[t]he 'similarly situated persons' to whom the SRP is 'universally applicable' are those who are liable for the tax based on their income levels, their status as an 'applicable individual,' and their decision to pay the SRP rather than maintain health insurance for at least one month of the applicable year." (Reply Br. of Appellant United States of America at 5, B.A.P. Case No. 21-8011, ECF No. 18 ("Reply Br.").) In other words, Debtors' argument improperly focuses on the exceptions rather than the generally applicable rule of liability.

In the Dissent, our colleague raises slightly different concerns regarding the "universality" factor, concluding that the SRP does not meet the Sixth Circuit's criteria for a "universally applicable" tax in *Suburban I* and *Suburban II*. A careful review of those cases confirms that the SRP is a tax under the *Lorber/Suburban* test.

---

§ 18031(d)(4)(H), and this statute also does not clearly confer discretion on the exchanges in granting exemption certifications.

In *Suburban I*, the Sixth Circuit considered whether unpaid workers' compensation insurance premiums owed to the Ohio Bureau of Workers' Compensation constituted fees[13] or taxes.[14] The circuit court concluded that the premiums were more akin to taxes for purposes of the Bankruptcy Code's priority scheme because Ohio's workers' compensation system was mandatory for every employer in the state and employers were required either to participate or self-insure. *Suburban I*, 998 F.2d at 342. The court explained:

> In the case at bar, we recognize the public purpose of the workers' compensation premiums in the proper context in holding that they are entitled to priority in bankruptcy; since the Ohio system is centralized and universal, "injured employees . . . depend upon the financial soundness of the [Workers' Compensation] Fund . . . ." [ ]. If the State had an optional participation program, or allowed employers to purchase private liability insurance, it would be unfair and without statutory justification to call state-collected premiums "taxes" and put the Bureau ahead in line while leaving unpaid private insurers to languish along with the rest of the unsecured creditors.

*Id.* (citation omitted). Based on this reasoning, the Sixth Circuit considered the unpaid workers' compensation premium akin to an excise tax entitled to priority treatment under the Bankruptcy Code.

In *Suburban II*, the assessment at issue did not concern insurance premiums; rather, the claim for which the Ohio Bureau of Workers' Compensation sought priority treatment in bankruptcy concerned the reimbursement of payments made from Ohio's workers' compensation surplus fund to workers' compensation claimants, occasioned by the debtor's failure to pay

---

[13]The Sixth Circuit cited Supreme Court precedent for the definition of a "fee," explaining "[t]he Court has defined 'fees' for bankruptcy purposes as monies being paid to the Government 'incident to a voluntary act' such as applying to the bar or obtaining a broadcast license, since such payments 'bestow[ ] a benefit on the applicant, not shared by other members of society." *Suburban I*, 998 F.2d at 339-40 (quoting *Nat'l Cable Television Ass'n, Inc. v. United States*, 415 U.S. 336, 340-41, 94 S. Ct. 1146, 1149 (1974)); *see also United States v. River Coal Co., Inc.*, 748 F.2d 1103, 1106 (6th Cir. 1984) ("the chief distinction is that a tax is an exaction for public purposes while a fee relates to an individual privilege or benefit to the payer."). No party contends in this appeal that the SRP should be considered a fee as an exaction for an individual privilege or benefit bestowed on Debtors.

[14]The Sixth Circuit also cited Supreme Court precedent for the definition of "taxes" as "'those pecuniary burdens laid upon individuals or their property, regardless of consent, for the purpose of defraying the expenses of government or of undertakings authorized by it.'" *Suburban I*, 998 F.2d at 339 (quoting *City of New York v. Feiring*, 313 U.S. 283, 285, 61 S. Ct. 1028, 1029 (1941)). The SRP readily fits into this definition to the extent the federal government (in 2017 and 2018) imposed a pecuniary burden on individuals to encourage taxpayers to obtain individual health insurance and to defray the costs resulting from those who fail to do so.

workers' compensation fund premiums to the state and its failure to pay claims filed when it was a self-insured employer.  The government sought to broaden the holding in *Suburban I*, granting priority treatment to its claim for unpaid workers' compensation premiums, to cover its claim for reimbursement of claims payments to the debtor's workers.  *Suburban II*, 36 F.3d at 487-88.  The Sixth Circuit declined to do so for two reasons.  First, the court found that the "benefit" the government bestowed by paying claims filed by the debtor's injured workers did not inure to the general public welfare; rather the demand for reimbursement (but *not* the claim for the premium payment) amounted to "a penalty discretely imposed due to [the debtor's] disregard of its statutory obligations."  *Id*. at 488-89.  Second, to the extent the debtor was self-insured for a period and maintained bonding accordingly, when the government paid worker claims and sought reimbursement thereof, the government was similarly situated in bankruptcy to the bonding company that paid on a worker's claim and filed a claim for subrogation.  That private creditor would be disadvantaged if the state received priority for its like claim.  *Id*. at 489.

In this case, the SRP is analogous to the premiums employers owe in the Ohio workers' compensation system.  The SRP derives from a centralized and universal government system (the ACA) which mandates that all applicable individuals must maintain health insurance.  While applicable individuals were required to procure their own *private* health insurance, and only had to pay the SRP if they did not, this is not a meaningful distinction from the Ohio scheme given the context.  As in *Suburban I*, the government does not "compete" with private insurers for the SRP.  Indeed, like the Ohio system in *Suburban I*, if a debtor fails to obtain health insurance (akin to the self-insurance option in the Ohio system) and thereby owes the SRP to the federal government (akin to the premium owed to the state government in *Suburban I*), and the government files a bankruptcy claim for the SRP amount in a debtor's case owing to non-payment, the government will never be put "ahead in line" of similarly-situated "unpaid private insurers" as no such private insurer exists under the federal scheme.  As a result, the SRP resembles the unpaid insurance premium found to be akin to a tax in *Suburban I* and not the downstream claim for reimbursement found to be a penalty in *Suburban II*.  While the Dissent directs attention to the use of the term "default" in *Suburban II*, its focus is misplaced and misses the forest for the trees.

Returning to Debtors' arguments, Debtors contend that other aspects of the SRP render it a "penalty." They posit that Congress prohibited the IRS from using traditional tax collection and enforcement tools for nonpayment. (Debtors' Br. at 19 (citing 26 U.S.C. §§ 5000A(g)(2)).) And, without citation to authority, Debtors contend that the broad hardship exemptions evidence an intent to subordinate—not prioritize—the SRP relative to general unsecured creditors, since no other "tax" functions in this manner. (*Id.* at 20.) Because these arguments are unrelated to the factors that the Sixth Circuit has held this Panel must apply, the arguments do not assist the analysis. In addition, Debtors' citations to the *Sebelius* dissent (567 U.S. at 663-66) and another bankruptcy court's characterization of the SRP as "a regulatory penalty against individuals who fail to abide by the individual mandate insurance requirement" (*Albracht*, 617 B.R. at 854) are unavailing as neither the dissenting minority in *Sebelius* nor the bankruptcy court in *Albracht* were bound to apply the *Lorber/Suburban* test.

More fundamentally, however, the Panel must consider the *Lorber/Suburban* test in light of Supreme Court authority that distinguishes between a tax and a penalty. In 1931, the Court explained that a penalty "is an exaction imposed by statute as punishment for an unlawful act." *La Franca*, 282 U.S. at 572. In 1996, in analyzing whether an exaction constituted a tax or a penalty for purposes of the Bankruptcy Code's priority scheme, the Court wrote that "if the concept of penalty means anything, it means punishment for an unlawful act or omission." *CF&I*, 518 U.S. at 224. And, in 2012, when considering the constitutionality of the SRP as a tax and not a penalty, the Court reiterated these prior holdings and explained:

> [w]hile the individual mandate clearly aims to induce the purchase of health insurance, it need not be read to declare that failing to do so is unlawful. Neither the Act nor any other law attaches negative legal consequences to not buying health insurance, beyond requiring a payment to the IRS. The Government agrees with that reading, confirming that if someone chooses to pay rather than obtain health insurance, they have fully complied with the law.

*Sebelius*, 567 U.S. at 567-68. The Panel cannot ignore that the Supreme Court already has explained that a penalty is "punishment for an unlawful act or omission" and that not purchasing insurance in compliance with the individual mandate did not constitute an unlawful act or omission. Notwithstanding the Panel's satisfaction that the six *Lorber/Suburban* elements have

each been satisfied for purposes of finding the SRP to be a "tax," we are equally convinced that the SRP cannot be a "penalty" under clear Supreme Court precedent.

## II.        The SRP is a Tax "Measured by Income."

Section 507(a)(8)(A) grants priority for certain prepetition income and gross receipts taxes due within the three-year period before the petition date. More specifically as it pertains here, a governmental unit's claim is entitled to priority "only to the extent that [it is for] a tax on or measured by income. . . ." 11 U.S.C. § 507(a)(8)(A)(i). The Bankruptcy Code does not clarify what it means for a tax to be "on or measured by income," nor have the Supreme Court or the Sixth Circuit written on the issue. And, as one bankruptcy court explained, "[t]he legislative history on this aspect of § 507(a)(7)(A) is scant and does not elucidate the meaning of this phrase." *In re O.P.M. Leasing Services, Inc.*, 60 B.R. 679, 680 (Bankr. S.D.N.Y. 1986).

The bankruptcy court concluded that the SRP is not a tax on or measured by income. *Juntoff*, 2021 WL 1522206, at \*8-11. The court stated that, while the ACA provides that the SRP is calculated using a formula that takes into consideration the taxpayer's income, "[c]alculation of the shared responsibility payment depends on a complicated formula for which income is at most one of many factors to be considered" and "income [does not] come into play for everyone subject to the" SRP, such as the McPhersons (who paid a flat amount rather than a portion of their income). *Id*. at \*9-10. Based on these premises, the court reasoned: "To the extent that the income plays a role in determining whether one is exempt from the shared responsibility payment, it would be no more correct to say that the shared responsibility payment is measured by income than it would be to say that the shared responsibility payment is measured by membership in an Indian Tribe or any other criteria justifying an exemption under the statute." *Id*. at \*10. Finally, the court distinguished other cases holding that the SRP is a tax entitled to priority under § 507(a)(8)(A), finding they "do not appear to have applied the standard of tight construction under *Howard Delivery* [547 U.S. 651]." *Id*. (citing *In re Szczyporski*, 531 F. Supp. 3d 934 (E.D. Pa. 2021) and *Matter of Cousins*, 601 B.R. 609 (Bankr. E.D. La. 2019)).

While Debtors' argument on appeal essentially echoes the bankruptcy court's analysis, the IRS contends that the bankruptcy court erred by interpreting § 507(a)(8)(A) too narrowly in finding it is intended to apply only to traditional income taxes. The IRS argues that § 507(a)(8)(A) includes two categories—taxes "on" income and taxes "measured by" income— and Subsection (A), therefore, covers a broad array of taxes that are not limited to the narrower group of solely income taxes. (IRS Br. at 22 (citing *In re Williams*, 173 B.R. 459, 463 (Bankr. E.D.N.Y. 1994), *aff'd*, 188 B.R. 331 (E.D.N.Y. 1995), and *In re Greektown Holdings, LLC*, No. 08-53104, 2013 WL 2285763, at *4 (Bankr. E.D. Mich. May 16, 2013) (citing *Williams*).) The IRS avers that the SRP is both a tax "on" and "measured by" income and cites two cases to explain when a tax can be deemed to be on or measured by income or gross receipts, *In re O.P.M. Leasing Servs., Inc.*, 60 B.R. 679, and *Raiman v. State Bd. of Equalization* (*In re Raiman*), 172 B.R. 933 (B.A.P. 9th Cir. 1994).

In *O.P.M.*, the bankruptcy court concluded that Texas's franchise tax as applied to corporations doing business in and outside of Texas was a capital-based exaction *apportioned* by gross receipts (earned in Texas as a percentage of overall receipts) but *measured* by capital, because the percentage of gross receipts earned in Texas would be multiplied by the amount of the entity's capital to calculate the tax owed—subject to a minimum tax. 60 B.R. at 682-83. Thus, the state's tax claim was not entitled to priority treatment under § 507(a)(7)[15] because unpaid franchise taxes under the Texas statute were not taxes "on or measured by income or gross receipts." The court explained:

> The mere mention of gross receipts in the [statutory] formula does not automatically activate § 507(a)(7)(A) and accord the State priority status. The State, however, makes precisely such an argument, ascribing an extraordinarily broad meaning to the word "measure" to encompass the word "allocate." This interpretation would emasculate the words of § 507(a)(7)(A), and would render the strict construction of the § 507(a)(7)(A) priority statute meaningless. The gross receipts ratio has no impact on the measurement of the tax as it relates to capital, and thus the tax in actuality is not on or measured by gross receipts.

---

[15]Congress renumbered subpart § 507(a)(7) as § 507(a)(8) in the Bankruptcy Reform Act of 1994 (Pub. L. No. 103-394, 108 Stat. 4106 (Oct. 22, 1994)).

*Id*. at 682.    The IRS contends that *O.P.M*. supports its argument because, similar to the conclusion in *O.P.M*. that the tax at issue was "measured by" capital even though a flat rate could apply, calculating the SRP also requires choosing between a flat rate or a percentage of the taxpayer's taxable income, making the SRP a tax "measured by income."

In *Raiman*, 172 B.R. 933. the appellate panel decided that a California sales tax statute on personal property retailers constituted a tax on or measured by gross receipts for purposes of § 507(a)(7)(A).   The debtor argued that "the tax assessment was not on 'gross receipts' since a taxpayer is allowed to make certain exclusions from her total receipts.   In other words, Debtor insists that in order to be afforded priority pursuant to Section 507(a)(7)(A) . . . the tax must be one which is measured by all receipts received by a taxpayer, without any items or transactions excluded." *Id.* at 937.   The court disagreed, finding no reason to believe "that Congress intended the term 'gross receipts' to have a strict federal definition rigidly limited to those situations where a tax is imposed on total receipts without exclusion." *Id*. at 939.   Rather, the court concluded, "the California tax is in a true sense 'measured by' gross receipts.   That is, the amount of the taxpayer's total receipts is an integral initial component of the formula with reference to which the amount of the tax is determined, and not merely a method of apportioning liability for a tax already calculated in some other fashion." *Id*. at 939-40.   The IRS contends that, as in *Raiman*, the SRP is a tax under the plain language of § 507(a)(8)(A) because a taxpayer's income is an integral initial component of the formula to determine their SRP liability.

The Panel agrees that the SRP is a tax "measured by" income.   As the Supreme Court explained in *Sebelius*, the SRP is "calculated as a percentage of household income, subject to a floor based on a specified dollar amount and a ceiling based on the average annual premium the individual would have to pay for qualifying private health insurance."   567 U.S. at 539.   While certain taxpayers are exempted from having to pay the SRP, all non-exempt taxpayers (i.e., all those facing tax liability) have their SRP payment calculated using a formula that measures the tax in part by consideration of their income.   And, while a taxpayer may be obligated to pay a flat amount rather than a percentage of their income, making that determination requires a taxpayer to input their income into a calculation.   Stated differently, it is impossible to discern a

non-exempt taxpayer's liability for the SRP without factoring their income into the analysis, making the SRP a tax "measured by" the taxpayer's income. *See also In re Miller*, 634 B.R. 641, 645 (Bankr. M.D. Ga. 2021) (internal citations omitted) ("The calculation of a taxpayer's SRP is either a flat fee or a percent of an individual's income, whichever is greater. . . . The flat fee [] is paid only when it is higher than the percentage that would be paid out of an individual's income. Therefore, even the flat fee is measured by a taxpayer's income to quantify his or her responsibility.").

Section 507(a)(8)(A) does not require that the tax be calculated *solely* or *primarily* by measuring income. While the Panel recognizes that *Howard Delivery*, 547 U.S. 651, requires that we "tightly construe" the priority classes, we reject the contention that Congress intended the phrase "measured by income" to require that a tax must be "measured by income *only*" to fit in § 507(a)(8)(A). As such, the discussion in *Raiman* on how to interpret Congress's intent regarding the phrase "gross revenue" is instructive.[16]

## CONCLUSION

For these reasons, the Panel concludes that the bankruptcy court erred in finding that the SRP is not a tax measured by income for purposes of § 507(a)(8)(A). Therefore, the court's Order Sustaining Debtor's Objection to the IRS's priority claim is REVERSED and Debtors' cases are REMANDED for further proceedings consistent with this opinion.

---

[16] Because the Panel concludes that the SRP constitutes a tax "measured by" income under § 507(a)(8)(A), it need not address the IRS's arguments that the SRP is a tax "on" income or an "excise tax on a transaction" under § 507(a)(8)(E).

———————————

**DISSENT**

———————————

SCOTT W. DALES, Chief Bankruptcy Appellate Panel Judge, dissenting. Each of the Appellees in these consolidated appeals owes a modest and undisputed debt to the Appellant, Internal Revenue Service ("IRS"), on account of the formerly-key feature of the Patient Protection and Affordable Care Act of 2010 ("ACA") sometimes called the "Shared Responsibility Payment ("SRP"). *See* Pub. L. No. 111-148, 124 Stat. 119; *see also* 26 U.S.C. § 5000A(b) (imposing the SRP as a "penalty" for not maintaining minimum health insurance coverage). After failing to persuade the Bankruptcy Court that the SRP is either an "excise tax" or a tax "measured by income," the IRS now makes its same pitch to the Panel, arguing that the SRP is such a tax—the key to unlocking priority treatment for its claims under 11 U.S.C. § 507(a)(8). I agree with the Bankruptcy Court that the IRS has not clearly established its right to priority treatment. Though I regard the question as close and the Panel's analysis as thoughtful, I cannot subscribe to reversal.

In seeking priority treatment for its SRP claim as a "tax," the IRS faces an uphill battle for at least three reasons.

First, and most generally, the applicable rule of decision does not favor priority treatment because "[e]quality of distribution among creditors is a central policy of the Bankruptcy Code." *Begier v. Internal Revenue Serv.*, 496 U.S. 53, 58 (1990). To honor this precept, courts must be sparing in permitting priority treatment because every decision to elevate the priority of one creditor reduces the fund that feeds unsecured creditors. It also reduces the share of other priority creditors. For these reasons, "creditors must directly tie their priority claims to specific provisions of the Bankruptcy Code." *See Yoder v. Ohio Bur. of Workers' Comp.* (*In re Suburban Motor Freight, Inc.*), 998 F.2d 338, 342 (6th Cir. 1993) ("*Suburban I*"). Sixth Circuit case law and fundamental bankruptcy policy[1] tip the scales against affording the IRS priority for the SRP.

———————————

[1]As the Bankruptcy Court also observed, the IRS's expansive view of the SRP as a tax undermines the other fundamental bankruptcy policy—the fresh start. In order to earn a chapter 13 confirmation and discharge, the

As explained below, and for slightly different reasons than those motivating the Bankruptcy Court, in my judgment, the IRS has not tied its claim to the Bankruptcy Code's priority provisions.

Second, the only textual indication that the SRP is a "tax" is its placement within the Internal Revenue Code, yet Congress expressly tells us not to draw any "inference, implication, or presumption of legislative construction" from the location of the SRP (or any other provision) within title 26. *See* 26 U.S.C. § 7806(b). Moreover, the actual text of the statute consistently and repeatedly refers to the SRP as a "penalty." The Supreme Court authority upon which the IRS principally relies, *National Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012), teaches that Congress's choice of language deserves respect when we are called upon to decipher how two federal statutes fit together, even while applying a less textual, and more functional, approach to the same question for other purposes. *Id.* at 544 (holding that the SRP is not a "tax" for purposes of the Anti-Injunction Act, and noting that how two federal statutes relate to each other "is up to Congress, and the best evidence of Congress's intent is the statutory text."). Here, we are confronting precisely the same sort of question that the Chief Justice addressed in Part II of his opinion for the court, namely, how to dovetail two federal statutory creatures—the SRP and the Bankruptcy Code's priority provision. If Congress had included the health insurance coverage requirement (and the related exaction for noncoverage) within, say, title 42, instead of title 26, I doubt it would have occurred to anyone to treat the SRP as a tax, rather than a penalty or forfeiture for ignoring a statutory command. But for its placement within the Internal Revenue Code, the SRP would appear to be a regulatory penalty for an individual's failure to comply with a statutory requirement.

Third, laying aside the text of the ACA for a moment, even the Sixth Circuit's functional approach to deciding whether an exaction is a tax points against treating the SRP as a tax. *See Ohio Bur. of Workers' Comp. v. Yoder* (*In re Suburban Motor Freight, Inc.*), 36 F.3d 484 (6th Cir. 1994) ("*Suburban II*"); *Suburban I*, 998 F.2d at 489. Our Court of Appeals, in *Suburban I*,

---

Appellees' plans must pay all priority claims in full. *See* 11 U.S.C. § 1322(a)(2) (plan must pay priority claims in full) and 1328(a) (discharge upon completion of payments under the plan); *see also id.* § 523(a)(1) (exception to discharge for priority tax claims). It is the rare case in which both bankruptcy precepts, one excusing payment and the other requiring it, point in the same direction.

criticized the Ninth Circuit's approach in *County Sanitation District No. 2 v. Lorber Industries of California, Inc.* (*In re Lorber Industries of California, Inc.*), 675 F.2d 1062 (9th Cir. 1982), as creating a "threat" that "the Government automatically wins priority for all money any debtor owes it, regardless of the nature of the payments." *Suburban I*, 998 F.2d at 341. To curb that threat, the Sixth Circuit adopted the Fourth Circuit's more limiting approach, and did so in large part to respect the Bankruptcy Code's principal of *pro rata* distribution, mentioned above:

> Where a State "compel[s] the payment" of "involuntary exactions, regardless of name," and where such payment is universally applicable to similarly situated persons or firms, these payments are taxes for bankruptcy purposes.

*Suburban I*, 998 F.2d at 342. Indeed, in the first *Suburban* opinion, our Court of Appeals derided the Fourth Circuit's later decision to treat as a tax under the Bankruptcy Code a fee that Virginia charged motorists who failed to obtain private insurance.[2] *See id.* at 341. Although the motor vehicle insurance program in Virginia obviously differed in many respects from the ACA, the fact that both depended on a similar fee-for-failure mechanism to induce compliance with a requirement to obtain private insurance should give us pause.

Later, in *Suburban II*, the court reiterated its requirement that, to qualify as a tax, the exaction must be "universally applicable to similarly situated persons or firms," and noted that when a debtor's liability to pay the government "arises solely by virtue of its default, [it] is not a liability 'universally applicable to similarly situated persons or firms.'" *Suburban II*, 36 F.3d at 489. Returning to the present appeal, the obligation of the Appellees to pay the SRP arose only when they "fail[ed] to meet the requirement of subsection (a) for 1 or more months." 26 U.S.C. § 5000A(b)(1). The requirement to maintain a minimum level of health insurance may be universally applicable to all "applicable individuals," but the penalty for not doing so arises only upon default in obtaining coverage. This makes the SRP look more like what Congress repeatedly called it—a penalty.[3]

---

[2]The case in the crosshairs of *Suburban I* was *Williams v. Motley*, 925 F.2d 741 (4th Cir. 1991), a decision upon which the IRS relies in its briefing before our Panel.

[3]I would reject the IRS's argument that the SRP is "universally applicable" to those who fail to maintain the minimum essential coverage as a plausible but ultimately fallacious one, premised on a convenient narrowing of the class of persons at whom Congress directed its efforts. The IRS in this way disregards *Suburban II*'s

An additional observation regarding the Sixth Circuit's requirement that the exaction must be involuntary: the Chief Justice's explication of the SRP in Part III.C. of the *Sebelius* opinion, where he said that it "merely imposes a tax citizens may lawfully *choose to pay* in lieu of buying health insurance," undercuts the characterization of the SRP as an "involuntary exaction." *Sebelius*, 567 U.S. at 568.

Of course, the Supreme Court construed the SRP as a tax, and not a penalty, when deciding whether Congress had the constitutional power to impose it under a variant of the doctrine of constitutional avoidance. We must read Part III.C. of the *Sebelius* decision, therefore, for what it was—the fulfillment of the Supreme Court's duty to indulge "every reasonable construction . . . in order to save a statute from unconstitutionality." *Sebelius*, 567 U.S. at 562. The Chief Justice made it rather clear that treating the SRP as a tax was not "the most straightforward reading of the mandate," but only a "fairly possible one," one that was necessary to avoid the counter-majoritarian consequences of invalidating an Act of Congress. *Id.*

It is also worth repeating, however, that although the *Sebelius* court called the SRP a tax for purposes of saving the ACA from constitutional infirmity, the same decision called the SRP a penalty for purposes of understanding the interplay of two federal statutes, the ACA and the Anti-Injunction Act. The Panel's task today—assessing how the SRP dovetails with the Bankruptcy Code's priority provision—is more like the latter than the former. Because Congress has the undoubted authority to make the SRP a priority claim under the Bankruptcy Code or not, and because the SRP functions as a penalty, and because Congress consistently called it a penalty,[4] the Panel should treat it as a penalty for purposes of the Bankruptcy Code, just as the Supreme Court did for purposes of the Anti-Injunction Act. A tax-related penalty may qualify

---

requirement that an exaction is not a tax if, as here, it "arises solely by virtue of default." *Suburban II*, 36 F.3d at 489.

[4]Nothing in my dissent should suggest that the statutory labels that a state or local government might affix to their exactions merit the same deference that I would give federal statutory language. The Supremacy and Bankruptcy Clauses ensure that, unlike Congress, state and local governments have no authority to draft around the Bankruptcy Code. For this reason, it makes sense to apply a strictly functional approach to state enactments, disregarding labels, just as the *Sebelius* court did (in Part III.C of its opinion) when deciding whether Congress had the constitutional power to enact the ACA.

for priority treatment, but only where the penalty, unlike the SRP, is compensatory.  11 U.S.C. § 507(a)(8)(G).

In striving to uphold the ACA as a constitutional exercise of legislative power, the Supreme Court only needed to find a loose tie between the enactment and an enumerated power within the Constitution; to bring a claim, even a claim of a governmental entity, within the Bankruptcy Code's priority provision, however, the tie must be direct, tight, certain.  Doubts about the nature of the SRP as a tax or a penalty or a forfeiture or other exaction must be resolved against finding priority.  *Howard Delivery Serv. Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 667-68 (2006).

I recognize that treating the SRP as a tax for constitutional purposes and a non-tax exaction for the Bankruptcy Code's priority provision is in tension with *Clark v. Martinez*, 543 U.S. 371, 381 (2005), but the Supreme Court's more recent decision in *Sebelius* tolerated, if not created, this tension, by upholding the ACA as an exercise of Congress's taxing power notwithstanding the Anti-Injunction Act.  And, as Appellees' counsel reminded us during oral argument, the premise that the SRP must be either a tax or a penalty creates a "false dichotomy," a flawed premise that unnecessarily limits the Panel's options: the Panel may affirm the Bankruptcy Court's order as long as the SRP falls outside § 507(a)(8)(A) and (E).  The SRP may not be a tax or a penalty, but some other form of exaction, such as the price for choosing not to buy minimum health coverage (as the Chief Justice suggested while striving in his duty to uphold the ACA), or some other fee, fine, forfeiture, or other funding.  As long as the SRP is not a tax, we must affirm.

The Bankruptcy Court resolved its doubts about affording priority treatment to the SRP in favor of equality of distribution as *Howard Delivery*, *supra*, requires.  Despite the capable advocacy of the Appellant's counsel, those doubts, and others, persist, and should prompt us to affirm.  Therefore, I respectfully dissent.